3me 37
115 434

CASE 12—PETITION EQUITY—JUNE 14.

## Russell's heirs vs. Marks' heirs, &c.

APPEAL FROM UNION EQUITY AND CRIMINAL COURT.

A misnomer, where the patentee is sufficiently described, will not render the patent void, but the title will vest in the patentee, notwithstanding the mistake made in his name.

Where the warrant, entry, and survey were in the name of *Isaiah* Marks, but the patent issued in the name of *Josiah* Marks, the inference, in the absence of any evi-

Russell's heirs vs. Marks' heirs.

dence of an assignment, is, that the patent actually issued to *Isaiah* Marks, and that the insertaion of the name of *Josiah* was a mere mistake in writing the name of the patentee. In this case the mistake was corrected after the lapse of 65 years from the emanation of the patent. The defendants, claiming under a deed by *Josiah* Marks' not being invested with the legal title, (and not having shown a possession sufficient to defeat a recovery,) cannot rely upon lapse of time to prevent the correction.

Although a patent issued in 1787 in the name of one who had previously died, and the grant was therefore void and the legal title remained in the Commonwealth, yet by the act of 1792 the title vested in the devisees of the patentee in the same manner it would have done had the grant issued in the lifetime of the testator.

Every decision of the court below made during the trial must be excepted to at the time it is made, and if not thus excepted to, the error therein, if any, cannot subsequently be relied upon in that court as the ground for a new trial, nor in the court of appeals for a reversal of the judgment.

Where the copy of a will is offered as evidence it must appear that its reading was objected to, that the court passed upon the objection, and that the decision was excepted to; otherwise, such an exception cannot be considered by the court of appeals. The same rule applies as in case of exception to a deposition.

Where each one of several joint owners of land takes into his *possession* separate parcels of the land, and the land is thus separately held and claimed during many years, the presumption arises that a partition thereof was made between the parties, under which partition it has been thus held and enjoyed. This presumption is mainly founded on the fact of a separate possession by all the joint owners.

One joint owner of land, by having it in his possession and holding and claiming it as his own property, adversely to the rights of the other joint owners, and in such a manner as to apprise them of the adverse character of his possession, for a period of twenty years, may thereby acquire a separate right to it, which would be not only available against them, but also sufficient to enable him to maintain an action in his own name, to recover the possession of it, if illegally deprived thereof.

One of three joint owners of three tracts of land of 1,000 acres each, listed and paid taxes on one of the tracts, which was designated by his name and regarded as belonging to him in the neighborhood, but had no actual possession; his agent took some control over and management of the tract, but took no part of it into actual possession; and one without claim entered upon, cleared and cultivated a piece of said tract. No presumption of partition of the lands can arise from these circumstances, and they are not sufficient to confer upon such owner a separate right to the parcel claimed by him, but he is only invested with title to one undivided third part of such tract.

Vendee of one of three devisees of three tracts of land of one thousand acres each, (to be equally divided between them,) who has not had possession, and there having been no partition, sues to recover one of the tracts from one who is without title. *Held*, that the recovery can only be for one third of the tract sued for.

A lease of land in which the lessee "promised to see to said land and prevent waste or damage to the same until sold or otherwise disposed of" by the lessor. The lessee did not enter upon and take possession of the land. *Held*, that such superintending care over the land would not enable the lessor or those claiming under him to rely upon possession in bar of an action by the title-holder for the recovery of the land.

Where an entry upon land is not made under any claim, the law regards the possession as held under the superior title and as enuring to its benefit.

JEFF. BROWN, for appellants, cited 4 *Call*, 257; 3 *Ib.*, 495; 1 *Ib.*, 206; 1 *Wash.*, 38; 4 *Call*, 216; 6 *Munford*, 238; 6 *Robinson*, 322; 1 *Marsh.*, 100.

HUGHES & DALLAM, for appellees.

T. A. MARSHALL and JAMES HARLAN, on same side, cited 1 *Stat. Law*, 437; *Ib.*, 189; 2 *Ib.*, 1548; 3 *Bibb*, 328; 19 *Johnson*, 345; 12 *Wheaton*, 64.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

This action was commenced in the year 1852. It was brought by the heirs of Albert Russell, against the heirs of Isaiah Marks. Its object, when originally brought, was to perfect the title of the plaintiffs to one thousand acres of land in the county of Union, which they alleged, in their petition, had been sold and conveyed by Marks to their ancestor, Albert Russell, but which deed of conveyance had never been recorded, and was lost or mislaid.

William M. Anderson, and others claiming under him, filed their petition praying to be made defendants to the action. They stated in their petition that they claimed the one thousand acres of land, described in the plaintiffs' petition, and to which the plaintiffs were seeking to have their title perfected. They were accordingly made defendants, and filed their answers setting forth their title to the land.

The plaintiffs, by amended petition, alleged that the land referred to in their original petition was patented to Isaiah Marks, and devised by him to his brother, Elisha Marks, who conveyed it, in 1796, to their ancestor by a deed, which they had found since the commencement of the action, and which they then exhibited.

The petitioners who were made defendants stated, in their answers, that the land was not patented to Isaiah Marks, but was patented to one Josiah Marks, who, in 1832, conveyed it to McLean, by whom it was subsequently conveyed to the defendant, William M. Anderson.

The plaintiffs then stated, by amended petition, that in 1783 a military warrant (No. 1695,) issued in favor of Isaiah Marks for four thousand acres of land, on account of his services as

a captain in the Virginia continental line. That on this warrant four entries were made, of one thousand acres each, which were surveyed, and for which patents were issued in 1787. That the patent for the thousand acres in contest was issued in the name of Josiah Marks by mistake. That the patentee devised one thousand of the four thousand acres to the two eldest sons of his sister Williams, and the other three thousand acres thereof to his brothers Elisha, John, and Thomas Marks, to be equally divided between them. That a division had been subsequently made, and this thousand acres in contest had been allotted to Elisha, and it had been claimed and held under his deed to their ancestor, ever since that deed was executed in 1796.

These allegations were all denied by the defendants; and on final hearing the court below dismissed the plaintiffs' petition, from which decision they have appealed to this court.

As the warrant, entry, and survey, which are all exhibited, were in the name of Isaiah Marks, and as these, with the patent, form a connected chain in the deduction of title, the inference, in the absence of any evidence of an assignment, is, that the patent actually issued to Isaiah Marks, and that the insertion of the name of Josiah was a mere mistake in writing the name of the patentee. A misnomer, where the patentee is sufficiently described, will not render the patent void, but the title will vest in the patentee, notwithstanding the mistake made in his name. (*Swan vs. Wilson*, 1 *Marshall*, 100.)

The inference that naturally arises, under the circumstances mentioned, of the occurrence of a mistake in inserting the name of the patentee, is not repelled by a single fact proved in the cause. There is no evidence tending to prove an assignment of the entry or survey of this one thousand acres by Isaiah Marks to any person, nor is it even proved that at the date of the patent there was any person by the name of Josiah Marks in existence. The deed executed in 1832, by some person of that name, does not even tend to prove that fact. Who that person was, where he resided, or what was his age, at the time he executed the deed, are matters concerning which no witness was called upon to testify.

On the other hand, the inference of a mistake in the name is strongly corroborated by several circumstances. It is not stated in the patent that Josiah Marks was the assignee of Isaiah Marks, which, according to the uniform practice, would have been the case if such had been the fact. The grantor in the deed to McLean did not pretend to claim the land as the assignee of Isaiah Marks. He claimed it, as stated in the deed, under a military warrant which issued to himself, and referred to the identical warrant which issued in favor of Isaiah Marks, thus clearly showing that he had no right whatever to the land. The survey upon which this patent issued called for the beginning corner of another survey made for Isaiah Marks, numbered 1076, and the patent, although made to Josiah Marks, in describing the boundary of the land granted, called for the beginning corner of his former survey, No. 1076, thus showing that the patentee was the same person for whom the survey thus referred to had been made. And when the great similarity in the two names is considered, it must be conceded that the substitution of one name for the other was a mistake that might have readily occurred, and cannot be regarded as anything unusual or extraordinary.

As then the patentee was sufficiently described by reference to the warrant, entry, and survey, the misnomer in the grant did not render it invalid, and the legal title would have vested in Isaiah Marks had he been alive when the patent issued. But as he had previously died, the grant was void, and the legal title remained in the Commonwealth. By the act of 1792, the title, however, vested in the devises of the patentee, in the same manner it would have done had the grant issued in the lifetime of the testator. (*Lewis vs. McGee*, 1 *Marshall*, 199.)

But it is contended, that the copy of the will of Isaiah Marks, which was produced and relied upon by the plaintiffs, was not so authenticated as to be used as evidence upon the trial.

The first inquiry that arises upon this point is, was there any decision by the court below, with respect to the admissibility of the copy of the will contained in the record, and if so, was

it excepted to by the defendants, in such a manner as to enable them to rely upon the objection in this court.

It appears by a bill of exceptions which was filed in the cause, that the defendants declined to waive any and all objections to the authentication of the copies of all the papers read by the plaintiffs to the court, and more especially to the copy of the will in question, and objected to the reading of the same as evidence. It does not appear, however, that the court passed upon the objection thus made, or was called upon to decide the question, or if decided, that the decision was excepted to. Now, upon this state of case, have the defendants a right in this court to rely upon this objection?

If the objection had been insisted on in the court below, and that court had decided that the copy of the will which was objected to could not be usd as evidence, the plaintiffs might, upon its exclusion, have had the order of hearing set aside, and the cause continued until a copy of the will properly authenticated could have been procured. Or if the court had decided that the copy which was offered was admissible as evidence, and that decision had not been excepted to by the defendants, they could not complain of it in this court. The party objecting to the decision must except at the time the decision is made. (*Civil Code, sec.* 364.)

The copy of the will appears to have been read as evidence on the trial. A mere formal objection was made to it, but the court was not called upon to exclude it, or to decide upon its admissibility as evidence. The question not having been made and decided by the court below, cannot be made in this court for the first time.

If, however, as an objection was made to it, and it was not excluded, it should therefore be assumed that the court overruled the objection, and decided that it could be used as evidence, still, as that decision was not excepted to, its propriety cannot be considered in this court, and the copy of the will must be regarded as evidence in the cause. Every decision of the court below made during the trial, must be excepted to at the time it is made, and if not thus excepted to the error therein, if any, cannot, under the provisions of the Code of Prac-

tice, be subsequently relied upon in that court as the ground for a new trial, nor in this court for a reversal of the judgment.

The objection which was made to the copy of the will as evidence, is not entitled to any greater effect than an exception to a deposition. And it has been repeatedly decided, that such an exception cannot be considered by this court, unless it has been acted on in the court below, and an exception taken to the decision of that court.

Isaiah Marks devised one thousand acres of land, numbered two hundred and twenty-six, to be equally divided between the two eldest sons of one of his sisters; the remaining three thousand acres he devised to his three brothers before named. It is contended that there is no evidence to show that the land in contest is not the one thousand acres given by the testator to his two nephews, and designated by him as numbered two hundred and twenty-six, and therefore the plaintiffs have failed to show any title to it. This objection, however, is based on a misconception of the facts which appear in the record, and which are fully sufficient to demonstrate most satisfactorily that the land sued for is not the one thousand acres which was numbered two hundred and twenty-six.

The will bears date on the 20th of January, 1785. The one thousand acres devised by the testator to his two nephews must have been previously entered, or it could not have been designated by him as being numbered 226; for before it was entered it constituted a part of the four thousand acre warrant, and had no separate existence, and consequently could not have had a specific designation. The land in contest had not then been entered. It was entered on the 20th day of April, 1785, and surveyed on the 23d day of the following month, as appears by the copies of the entry and survey in the cause. It cannot, therefore, be the same land that was devised by the testator to his two nephews, but must be one of the remaining three surveys of one thousand acres each.

As however there is no direct evidence in the cause, that any division of the three thousand acres was ever made by the parties who were entitled to it, it is contended, that on this

ground also the plaintiffs have failed to establish their right to the land in contest.

The execution of the deed from Elisha Marks to Albert Russell is sufficiently proved. By that deed, Elisha Marks conveyed to Russell one thousand acres of land, being, as recited in the deed, the land bequeathed to the grantor by his brother Isaiah Marks, and which had been granted to the testator for his military services. Under that conveyance Russell became invested with all the title to the land which Elisha Marks derived under his brother's will. That interest was an undivided third part of the three thousand acres, and if no division was ever made of the land devised, still the plaintiffs showed title to one undivided third part of the land sued for. They however claim the whole tract, and allege, in suport of their claim, that a division of the three thousand acres was made between the three devisees, and that the one thousand acres in contest was allotted to Elisha Marks, by whose deed the title to it passed to their ancestor, Albert Russell.

As evidence that such a division was made, and has been acquiesced in by the parties interested, they prove, that in the year 1798 this tract of land was listed for taxation by Albert Russell, and that the taxes upon the same have, since that time, been paid by him and his heirs at law. They also prove, that for many years past it has been designated in the neighborhood as the Russell tract of land, and regarded as belonging to Russell's heirs.

It does not appear that the plaintiffs had actual possession of any part of said land at any time, unless the possession of the witness, Mobley, can be so regarded. He testified that he was residing on adjoining land with his father some thirty-five or six years ago, and continued to reside there a number of years, and during that time cleared and cultivated a piece of said land, and still has it in possession, but set up no claim to it himself. That he had always known the land as the Marks and Russell survey, and never heard of any other claim to it. But conceding that his possession enured to the benfit of the title-holders, it operated as much in favor of the other joint owners as of the plaintiffs, and besides was limited to his ac-

tual enclosure, as that was all he intended to take into his possession by entering upon the land.

It was also proved that G. F. Catlett, who lived in the county where the land was situated, had for a number of years before his death acted as the agent of Russell's heirs, and in that capacity had taken some control over and management of the land in controversy, but had never taken any part of it into actual possession.

Where each one of several joint owners of land takes into his *possession* separate parcels of the land, and the land is thus separately held and claimed, during many years, the presumption arises that a partition thereof was made between the parties, under which partition it has been thus held and enjoyed. This presumption is however mainly founded on the fact of a separate possession by all the joint owners. Here there was no actual possession by the plaintiffs of the land claimed by them, nor does it appear that the other two thousand acres of the land jointly devised was taken into possession by the other two devisees. For ought that appears to the contrary, the plaintiffs, under the conveyance to their ancestor, may have obtained a third part of the two thousand acres, or it may have been entirely lost by adverse titles. No presumption of a partition of the three thousand acres can therefore arise from the circumstances relied upon. Indeed, such a presumption seems to be repelled by the terms of the conveyance from Elisha Marks to the ancestor of the plaintiffs. The grantor in that deed did not thereby undertake to convey to the grantee the one thousand acres of land in contest, but merely conveyed to him the one thousand acres of land to which he was entitled under the will of his brother, Isaiah Marks. Under that will he was entitled to an undivided third part of three thousand acres, and that one undivided third part being one thousand acres, he conveyed to Albert Russell, the ancestor of the plaintiffs.

One joint owner of land, by having it in his possession, and holding and claiming it as his own property, adversely to the rights of the other joint owners, and in such a manner as to apprise them of the adverse character of his possession, for a

period of twenty years, may thereby acquire a separate right to it, which would be not only available against them, but also sufficient to enable him to maintain an action in his own name to recover the possession of it if illegally deprived thereof. The plaintiffs did not, however, have any such possession of the land sued for, and according to the testimony, they are only invested with a title to one undivided third part thereof. The other devisees, or such persons as may have derived the title thereto from them, have a right to the residue of the tract of land. If they were to sue for it, the plaintiffs, even if they had the possession of it, could not resist their claim, and consequently the recovery in this case must be limited to an undivided third part of the one thousand acres of land in contest:

The defendants alleged that they were in the actual possession of the land sued for since the year 1832, and insisted that such possession was a bar to the plaintiffs' action. To sustain this allegation they exhibit and prove the execution by G. F. Catlett, of a writing, in which he acknowledged that he had leased this tract of land and several others from McLean, and "promised to see to said lands, and prevent waste or damage to the same until sold or otherwise disposed of by said McLean." This written instrument bears date in June, 1832, although the deed from Josiah Marks to McLean was not executed until the December following, and there is no testimony tending to prove that McLean had any claim or color of title to the land when Catlett executed the writing.

As however, Catlett never entered upon and took possession of the land, under this lease, it had no legal effect whatever injurious to the rights of Russell's heirs. If Catlett failed to see to said land for McLean, according to his promise, and the latter sustained any injury thereby, he was entitled to his remedy against him for such failure. But there is nothing in the nature of such an undertaking, although made to assume the character of a lease, which precluded Catlett from acting as the agent of Russell's heirs. He was not the tenant of McLean; he did not get the possession of the land from him, nor did he claim to act as his agent, or assume any control over

the land under his authority.  Inasmuch, however, as Catlett did not take possession of the land, it is not very important for whom he acted as agent in exercising a superintending care over it.  Such superintendence, if even exercised by him as the agent of McLean, would not benefit the defendants, or enable them to rely upon possession in bar of the plaintiffs' action.

There is no testimony that the defendants had the land in controversy, or any part of it, in possession, until about the time or after this action was commenced.  The possession which Mobley had cannot be regarded as their possession, for he testifies that he never heard of their claim to it until after Catlett's death.  As he did not enter under any claim, although he considered the land as belonging to Russell's heirs, the law regards his possession as held under the superior title, and as enuring to its benefit.  The devisees of the patentee, and those claiming under them, were invested with the title to the land, and consequently Mobley's possession enured to their benefit.  The defendants, who claimed under McLean, did not have any title to it, and therefore cannot claim the benefit of Mobley's possession, as he neither entered upon the land, nor held the possession of it, under McLean or any of his vendees. And as the defendants who claimed under McLean showed no right or title to the land, the court below committed a manifest error, in rendering a judgment in their favor on their crosspetition, quieting their title to the land in contest.

The principal ground of defense relied upon by the defendants was the length of time which had elapsed, after the patent issued, before an attempt was made to correct the mistake in the name of the patentee.  This defense, however, was based upon the mistaken idea that the devisees of Isaiah Marks, or those claiming under them, were asserting a mere equitable right against the holders of the legal title.  But as Isaiah Marks was the person intended to be invested with the legal title, by the grant from the Commonwealth of Virginia, and the insertion in the grant of the name of Josiah Marks was a mere misnomer of the real patentee, the title did not pass to any person by the name of Josiah Marks, and the defendants,

who claim under a deed made by some person of that name, are not invested with the legal title. Not having the legal title, they cannot rely upon the lapse of time to secure them against its divestiture. The plaintiffs, as we have seen, have acquired the legal title to an undivided third part of the land, and as the defendants have no title to it whatever, either legal or equitable, and have not had a possession thereof which is sufficient to defeat a recovery by the plaintiffs, the judgment of the court below is manifestly erroneous.

Wherefore, the judgment against the plaintiffs, and also the judgment in favor of the defendants on their cross-petition, are reversed, and cause remanded with directions to render a judgment for the plaintiffs, for an undivided third part of the one thousand acres of land in contest.