## MARTHA B. GRANT

*vs.*

## THE JACKSON & SHARP COMPANY.

New Castle, Feb. T. 1882.

*Scire facias on mortgage ; practice ; release of dower by joining in conveyance of mortgaged premises ; widow's right to redeem.*

1. A tenant from year to year is not a terretenant; and it seems that service upon him alone, of writ of *scire facias* upon a mortgage, is not sufficient to support a judgment.

2. A return of *non est inventus* as to an absent mortgagor in a writ of *scire facias* upon a mortgage is improper, and not sufficient to obtain a valid judgment; there should be two returns of *nihil*.

3. When a married woman who has joined with her husband in a mortgage of his land, thereafter joins with him in an absolute conveyance of the land to a third party, subject to the mortgage, she thereby releases and parts with all her inchoate right of dower in the land, and has no interest therein which will entitle her, after her husband's death, to maintain a bill in equity to redeem the land from the mortgage and have an assignment of dower therein, as against a purchaser of the land under a judgment on *scire facias*, irregularly obtained and which was a nullity as to her.

4. The proposition that it is no defense to an action of dower that the widow has released her right of dower to a stranger is not the law in suits in equity in this State to obtain an assignment of dower.

BILL TO REDEEM LAND FROM THE LIEN OF A MORTGAGE AND TO HAVE AN ASSIGNMENT OF DOWER THEREIN.—The bill was filed February 15, 1879.   The following are the material facts upon which the prayer is founded :

1. The marriage of the complainant and Charles F. Grant, November 1, 1847.

2. A deed of J. Zebley and wife to Grant, of the premises, March 27, 1847.

3. Mortgage of Grant and wife of the same to Sabilla A. Stone. .

4. Deed from Grant and wife of the same premises to Susan Stafford, March 2, 1858.

5. *Scire facias* on the mortgage, which was not served upon or made known to the complainant or Susan Stafford, but returned *non est* as to Grant, the husband, and made known to Samuel McCaulley, William D. Sparks, and A. Poinsett, terretenants.

6. Judgment on said *scire facias* in the following form : " And now, to wit, this 9th day of December, 1859, on motion, judgment, amount to be ascertained by the prothonotary."

7. *Levari facias* on said judgment, January 28, 1860, in which writ the names of the complainant and Susan Stafford do not appear, but only that of Charles F. Grant.

8. Sale to Sabilla A. Stone by the sheriff, February 18, 1860, for $2,300.

9. Deed from A. Cannon, sheriff, to Sabilla A. Stone, in which the name of the complainant does not appear, which deed, following in that respect the *levari facias*, recites a judgment against Charles F. Grant alone, and conveys the property as described in the mortgage " for such estate and estates and under such rents and services as the said Charles F. Grant and terretenants had and held the same at or before' the taking thereof on execution."

10. Deed of Sabilla A. Stone to William McCaulley for $3,000, January 25, 1861.

11. Deed of William McCaulley to Burke and McCaulley for $7,000, December 4, 1866.

12. Deed of Burke and wife and McCaulley to W. G. Mendinhall, May 10, 1867.

13. McCaulley to Mendinhall, *inter alia*, October 8, 1867.

14. Deed of Jacob Richardson, sheriff, to Jackson and Sharp, of these premises, November 13, 1868.

15. Release of Sophia M. Burke to the Jackson & Sharp Company, February 16, 1870.

16. Deed of Jackson and Sharp to defendant, *inter alia*, for $80,000, April 1, 1870.

*Anthony Higgins*, for the complainant :

I. Admitting that the complainant did join with her hus-

band in conveying her equity of redemption in the premises to Susan Stafford, yet the defendant, being a stranger to the release, can derive no advantage from it; nor, as against the defendant, is the complainant estopped from asserting dower.

A stranger to a release made by the wife can derive no advantage from it; nor as against him is she estopped from asserting dower. 2 Scribn. Dow. 250, § 32; *Pixley* v. *Bennett*, 11 Mass. 298; *Robinson* v. *Bates*, 3 Met. 40; *Littlefield* v. *Crocker*, 30 Maine, 192; *Harriman* v. *Gray*, 49 Maine, 537; *Woodworth* v. *Paige*, 5 Ohio St. 70; *Blain* v. *Harrison*, 11 Ill. 384; *Summers* v. *Babb*, 13 Ill. 483.

It is no defense to an action of dower that the widow has released her right of dower to a stranger. 2 Scribn. Dow. 288; *Pixley* v. *Bennett, Robinson* v. *Bates, Littlefield* v. *Crocker, Harriman* v. *Gray, Woodworth* v. *Paige, Blain* v. *Harrison,* and *Summers* v. *Babb, supra; Taylor* v. *Fowler,* 18 Ohio, 567; *Kitzmiller* v. *Van Rensselaer,* 10 Ohio St. 63; *Gove* v. *Cather,* 23 Ill. 634; *Harrison* v. *Eldridge,* 2 Halst. L. 392; *Rickard* v. *Talbird,* Rice, Eq. 158; *Pinson* v. *Williams,* 23 Miss. 64; *Randolph* v. *Doss,* 3 How. (Miss.) 205; *Gray* v. *McCune,* 23 Pa. 447, 451; *Carter* v. *Walker,* 2 Ohio St. 339.

II. The complainant's right to dower was not extinguished, nor her right to redeem impaired, by the *scire facias* upon the mortgage, and judgment, sale and conveyance by the sheriff thereunder, because the complainant was not made a party defendant to the proceeding; nor was any judgment rendered against her or against her estate in the land.

The inchoate right of dower of a wife is not extinguished, nor her right to redeem impaired, by proceedings in the lifetime of her husband, unless she is made a party thereto. 1 Scribn. Dow. p. 482, § 32; 2 Scribn. Dow. p. 260, § 56, note 5; *Bell* v. *New York,* 10 Paige, 49–56; *Denton* v. *Nanny,* 8 Barb. 618; *Wheeler* v. *Morris,* 2 Bosw. 524; *Mills* v. *Van Voorhies,* 20 N. Y. 412, 23 Barb. 125; *Lewis* v. *Smith,* 9 N. Y. 502; *McArthur* v. *Franklin,* 15 Ohio St. 485, 16 Ohio St. 193, cited in 2 Scribn. Dow. p. 200, note 5; *Gilbert* v.

*Maggord*, 2 Ill. 471 ; *Leonard* v. *Villars*, 23 Ill. 379 ; *Chambers* v. *Nicholson*, 30 Ind. 349 ; *Chase* v. *Abbott*, 20 Iowa, 154–158 ; *Cornog* v. *Cornog*, 3 Del. Ch. 407.

The necessity to make her a party in order to bar her rights is just as strong when the proceedings to enforce the mortgage is by judgment on a *scire facias* at law as where it is by a decree of foreclosure in a court of equity.    *Gilbert* v. *Maggord*, and *Cornog* v. *Cornog*, *supra; Mills* v. *Van Voorhies*, 20 N. Y. 415.

The return of the sheriff shows no service whatever upon Mrs. Grant in compliance with the requirements of the statute.

The only other service of a writ of *scire facias* upon a defendant is that of the common-law practice, by which two returns by the sheriff of *nihil habet* are equal to one *scire feci*.    *Bauduy* v. *Bradun*, 1 Harrington, 183 ; 2 Saund. William's ed. 72 *w;* 2 Tidd, Pr. 1124 ; *Clarke* v. *Bradshaw*, 1 East, 86 ; *Hayward* v. *Ribbans*, 4 East, 310 ; *Underhill* v. *Devereux*, 2 Saund. 72 note ; *Randal* v. *Wale*, Cro. Jac. 59 ; Dyer, 168 *a*, 172 *a; Bromley* v. *Littleton*, Yelv. 113 ; *Barcock* v. *Tompson*, Sty. 281, 288, 323 ; *Andrews* v. *Harper*, 8 Mod. 227 ; *Taylor* v. *Young*, 71 Pa. 81 ; *Roberts* v. *Williams*, 5 Whart. 170 ; *Faunce* v. *Subers*, 32 Legal Int. 90, 1 W. N. C. 248.

*George H. Bates* and *Austin Harrington*, for the defendant :

I.  The act of joining in the mortgage and acknowledging it on private examination was by its own force, *eo instanti,* a bar of dower as against the mortgagee and all title derived under the mortgage.    No future judgment or process of any kind was necessary to give it such operation.

This view is illustrated by cases in which, after mortgage in which wife joined, and the release by husband of equity to mortgagee or his assigns, the wife is held to be barred absolutely—the equity of redemption, to which alone any right attached, being gone, and dower excluded though by no judi-

cial process. *Duval* v. *Febiger*, 1 Cinc. S. C. Rep. 268; *Pitts* v. *Aldrich*, 11 Allen, 39; *Mantz* v. *Buchanan*, 1 Md. Ch. 202; *Stelle* v. *Carroll*, 37 U. S. 12 Pet. 201 (9 L. ed. 1056); *Brown* v. *Lapham*, 3 Cush. 551; *McArthur* v. *Franklin*, 15 Ohio St. 485, 16 Ohio St. 193.

It is sufficient if she join in the deed or mortgage, without any special reference to the right of dower; words sufficient to make a conveyance by the husband are sufficient for a relinquishment by the wife.  2 Scribn. Dow. 282.

II. The effect of the sale in *scire facias* was to vest in the purchaser all the title and interest of the mortgagors.  It vests in the purchaser all the rights of all parties to the suit. *Frisch* v. *Kramer*, 16 Ohio, 125; *Scott* v. *Hickox*, 7 Ohio St. 95; *Taylor* v. *Fowler*, 18 Ohio, 567; *Carter* v. *Walker*, 2 Ohio St. 339.

If the mortgagee is himself the purchaser, he becomes in effect a mortgagee in possession, or one who has entered for condition broken.  2 Jones, Mort. 1395; *Vanderkemp* v. *Skelton*, 11 Paige, 28; *Merrit* v. *Bowen*, 7 Cow. 13; *Smith* v. *Gardner*, 42 Barb. 356.

If the foreclosure is void as against the mortgagor for want of notice, the purchaser stands as assignee of the mortgage.  2 Jones, Mort. 1395; *Robinson* v. *Ryan*, 25 N. Y. 320.  And by the mortgage he is protected against any claim of dower by the wife.

When the rights of the mortgagor and mortgagee become united, through the purchase by the mortgagee of the equity of redemption, the right of dower is gone at law, and the only remedy of the widow, if she have not otherwise lost that, is to redeem in equity.  1 Scribn. Dow. 466, and cases cited.  In such case the purchaser is in under the mortgage, and his title is paramount to the dower title of the wife.  *Thompson* v. *Boyd*, 2 Zab. 543.

The proceedings for foreclosure of a mortgage in which the wife has joined, and its sale thereunder, do not extinguish the mortgage so as to let the widow in to her dower; and the same principle is often applied to sale of the equity otherwise than under proceedings for foreclosure.

Having joined in the mortgage and so relinquished her dower, she can never be restored to it except in one of two modes: (1) payment by the husband or someone acting for him or in his right; (2) redemption of the mortgage by someone having a right to redeem.  *Brown* v. *Lapham*, 3 Cush. 551.

Payment must be by the husband or on his behalf.  1 Scribn. Dow. 525.

If no payment, no dower without redemption.  Id. 475.

The release of dower in a mortgage works an estoppel, not only in favor of the mortgagee and his assigns, but of those who become entitled by equitable substitution to its benefits. *Dearborn* v. *Taylor*, 18 N. H. 153.

Sale by administrator of husband of equity of redemption of premises mortgaged by husband and wife passed title to purchaser clear of dower.  *St. Clair* v. *Morris*, 9 Ohio, 15.

III. The omission of a party in interest in a bill or *scire facias* simply leaves his pre-existing right of redemption or of defense unconcluded.  It gives no right not had before. It takes away no right before existing in the mortgagee or those claiming under him.   The mortgagee and the party not joined stand precisely to each other as before, or as though no foreclosure had taken place.   2 Jones, Mort. 1395, 1396. The same principle applied to dower.   Id. 1420.

The failure to make the wife a party to the foreclosure suit in no wise affects her relinquishment of dower by joining in the mortgage.  So long as the mortgage is unpaid or unredeemed, she remains barred of her dower at law, and as against those entitled to the benefit of the bar of the mortgage. *Brown* v. *Lapham*, 3 Cush. 551.

If she is not made a party to the foreclosure, her right of dower is barred at law, and her only remedy would be by a bill in equity to redeem, if that were left to her.  *Bell* v. *New York*, 10 Paige, 49 ; *Van Duyne* v. *Thayre*, 14 Wend. 233, 19 Wend. 162 ; *Denton* v. *Nanny*, 8 Barb. 618.  See also *Wheeler* v. *Morris*, 2 Bosw. 524 ; *Mills* v. *Van Voorhis*, 23 Barb. 125, 20 N. Y. 412 ; *Powell* v. *Ross*, 4 Cal. 197 ; *McArthur* v. *Franklin*, 15 Ohio St. 485, 16 Ohio St. 193.

IV. There is much authority for the position that the wife of the mortgagor is not a necessary party to a suit for foreclosure of a mortgage during the life of the husband. *Pitts* v. *Aldrich*, 11 Allen, 39; *Riddick* v. *Walsh*, 15 Mo. 519; *Thornton* v. *Pigg*, 24 Mo. 249; *Denton* v. *Nanny*, 8 Barb. 618; *Johnson* v. *Monell*, 13 Iowa, 300.

It has been doubted, says Scribner, whether, in a foreclosure against the husband in his lifetime, the wife had any right enforceable against the equity of redemption. 1 Scribn. Dow. 478 *et seq.*

The correct rule, probably, is that for certain purposes she should be joined,— not to give effect to the foreclosure as against the husband, but to conclude her from ever after putting up any defense against the mortgage; such as payment, release, fraud, etc.

The distinction seems to be that when foreclosure is by bill in equity she must be a party to bar her right to redeem. But when the foreclosure — so called — is by writ of entry or *scire facias* against the husband in his lifetime, then the wife need not be made a party. 2 Jones, Mort. 1067; *Pitts* v. *Aldrich*, 11 Allen, 39.

It has also been held that the wife being a party with her husband, service on him is sufficient. *Foote* v. *Lathrop*, 53 Barb. 185, affd. in 41 N. Y. 360; *Ferguson* v. *Smith*, 2 Johns. Ch. 139; *Leavitt* v. *Cruger*, 1 Paige, 421.

V. Whatever may be the effect of the mortgage and proceedings under it, the deed to Susan Stafford is a conclusive bar to the present suit.

A mortgagor who has conveyed by deed the equity of redemption cannot maintain a bill to redeem (*True* v. *Haley*, 24 Maine, 297; *Phillips* v. *Leavitt*, 54 Maine, 405); nor a mortgagor whose right in equity has been sold on execution (*Ingersoll* v. *Sawyer*, 2 Pick. 276. See *Peabody* v. *Patten*, Id. 517; *Bigelow* v. *Willson*, 1 Pick. 485; 2 Jones, Mort. 1402, 1404, 1056).

By joining in granting part of deed to Susan Stafford, she barred her dower. 2 Scribn. Dow. 282, and cases cited; 3 Ind. 485; 20 Iowa, 502.

THE CHANCELLOR.—Assuming that the deed from Zebley and wife conveyed the fee in the premises, which is taken to be admitted in this case, the mortgage by Grant and wife to Sabilla A. Stone had no other effect than to create in her favor a chattel interest; the estate in the premises, both in law and in equity, remaining in Grant, according to the doctrine announced by the superior court of this State in the case of *Cooch* v. *Gerry*, 3 Harrington, 280,—it having been decided in that case that a mortgagor in possession is the real owner of the land; the mortgage, though in form a conveyance of the land, is a mere security for the payment of money, and the mortgagee before foreclosure has but a chattel interest.    The rigor of the common law in respect to mortgages does not prevail in this State.    At common law a mortgage was a conveyance of land with a stipulation called a defeasance, by which it was provided that, if the mortgage debt should be paid by the mortgagor to the mortgagee on a day named, the conveyance should be void and the estate should either, by virtue of the defeasance, revest in the mortgagor, or he should be entitled to call upon the mortgagee for a reconveyance of the same.    The fee in the land vested in the mortgagee from the date of the conveyance, subject to the condition of being defeated by the performance of the stipulation on the part of the mortgagor.    Littleton classes mortgages with estates upon condition.    They are not so classed in this State, nor are they generally so classed in this country, nor did this view ever prevail in a court of equity. "Not only," says Chancellor Kent (4 Kent, Com. 158), "the original severity of the common law treating the mortgagor's interest as resting upon the exact performance of the condition, and holding the forfeiture or the breach of the condition to be absolute by nonpayment or tender at the day is entirely relaxed, but the narrow and precarious character of the mortgagor at law is changed under the more enlarged and liberal jurisdiction of the courts of equity.    Their influence has reached the courts of law, and the case of mortgages is one of the most splendid instances in the history of our

jurisprudence of the triumph of equitable principles over technical rules, and of the homage which those principles have received by their adoption in the courts of law."

Charles F. Grant, notwithstanding he and his wife had executed and delivered a mortgage of the premises to Sabilla A. Stone to secure the payment of the sum of $2,500, continued to be seised and possessed of both the legal and equitable estate in said premises until the second day of March, 1858, when he and his wife conveyed the same by deed to Susan Stafford. Upon the execution and delivery of that deed he ceased to have any estate or interest in the land, and she ceased to have any inchoate right of dower therein. From thenceforth, against them and against every other person, Susan Stafford was the sole and exclusive owner in law and equity of the premises. These premises, however, were subject to a lien of $2,500, and its interest, which Grant and his wife had created by their mortgage to Sabilla A. Stone while he owned the land. It would have been perfectly competent for Mrs. Stafford, at any time after acquiring title under her deed from Grant and wife, and before sale under the judgment on the *scire facias* on the mortgage, to pay off the mortgage debt and to preserve the land free and discharged from any claim, either of title or incumbrance, by any person whomsoever. Susan Stafford did not pay off the debt or discharge the mortgage lien, and the mortgagee caused a writ of *scire facias* to be sued out on her mortgage, upon which judgment was obtained, a *levari facias* awarded, and a sale of the premises made by the sheriff to the mortgagee for $2,300, being $200 less than the principal of the mortgage debt.

This brings me to the consideration of the proceedings had at law under the mortgage, and their effect in passing title to the premises to the purchaser. Some of these proceedings were illegal and vicious, and it passes legal comprehension how they could have been had in a court of justice. The forms of the law are of the substance of the law.

Many of these forms were not observed. It is true both

Grant and his wife were named in the body of the *scire facias;* but there was no service of it upon or notice of it given to her, and no return thereto was made as to her. Susan Stafford, to whom they had conveyed the land before the *scire facias* was issued, was not made a party thereto although she was the owner of the fee and the only legal tenant thereof at the time. If the record of title submitted to me by counsel on both sides in the case is true, Samuel McCaulley, William D. Sparks, and A. Poinsett, notified by the sheriff as terretenants, must have been, if anything, mere occupiers of the land, or at most tenants thereof from year to year, having no estate in the lands and no title upon which the mortgage was a lien or which would be affected by the sale. A lessee from year to year is not seised, nor is he terretenant; and the land of which he is merely possessed cannot be called his in the technical more than it can in the popular sense. 4 Watts & S. 256. Our statutes authorizing the sale of mortgaged premises, for the payment of a mortgage debt, must be held as intending that those having a real and substantial ownership in the mortgaged premises should have service of the writ, in order that they may show cause why execution of the mortgage debt should not be made of their lands. A mere occupier or tenant from year to year would have nothing subject to or liable for the debt, and nothing which could be in any manner taken in execution for the payment of the debt. Terretenants are liable to contribution towards payment of the debt, but in no case could tenants from year to year be held so liable.

In the case *Chahoon* v. *Hollenback*, 16 Serg. & R. 432, the court says in respect to certain defendants in that cause: " But they were in fact not terretenants, because they were only occupiers and not owners of the fee." None of the persons summoned as terretenants on the *scire facias* against Grant derived title from him by any conveyance whatever, vesting any estate in the premises in them, nor had any estate which was bound by the judgment against him; and no one has any right to interfere between the mortgage creditor and

his debtor, and dispute his right to satisfaction by execution,. but one who may be prejudiced by the judgment upon which such execution may issue.

On a *scire facias* to have execution in a real action, the defendant may plead *non tenure* generally, because the free-hold is in question, and that is favored in law ; and the terre-tenant may plead there are other terretenants not named, and pray. judgment if he ought to answer until the others are summoned, etc., though it would be otherwise if the *scire facias* had been against particular tenants by name.     2 Salk. 601 ; 2 Jac. L. Dict. *Scire Facias.*

On a *scire facias* against the heir and terretenants to reverse a common recovery of lands, the *scire facias* is to issue against all the terretenants, for they are to gain or lose by the judgment in the recovery.     2 Jac. L. Dict.

A *scire facias* to have execution of a fine shall not be sued against a lessee for years, but against him who hath the free-hold, who may have some matter to bar the execution.     Cro. Eliz. 471 ; 2 Jac. L. Dict.; 2 Tidd, Pr. 1173.

Again ; as showing who are and who are not terretenants. within the meaning of the law, I refer to Bacon's Abridge-ment, under the head of *Scire Facias*, where it is said that. " Regularly the *scire facias* is to be awarded to the heir and terretenants ; and it seems to be the better opinion that the terretenant alone is not to be charged, and that therefore, until the heir be summoned, or that it be returned that there is not any heir to be summoned, or that the heir hath not any lands to be charged, the terretenant ought not to be charged;. for the heir may have a release to plead or other matter to bar the execution.     And his land is rather to be charged than the land of the terretenant ; for the heir shall not have con--tribution against the terretenant, as the terretenant shall have."     Again : " All the terretenants are to be summoned, and therefore in a *scire facias* against some of them they may . plead that there are other terretenants not named, and pray judgment if they ought to answer *quousque* the others are. summoned."

Again : "Upon a judgment in debt a *scire facias* issued against the terretenants, and A was returned tenant, who pleaded that J. S.was seised of twenty acres of land which were the defendant's at the time of the judgment given, and prayed judgment if he should be put to answer until J. S. was warned. On demurrer this was held a good plea, but it was said that the writ should not abate, but that the defendant should not answer until the other was warned."

These extracts show that the person to be summoned or charged as a terretenant is one whose land is liable for the payment of the debt, and that, where there is more than one terretenant so chargeable, contribution may be had between them.   Now, the mere occupier of land or tenant from year to year thereof has no estate in the land, chargeable with the debt.   His personal effects cannot be seized in execution for its payment ; and hence there can be no possible reason why a *scire facias* on a mortgage or a judgment should be made known to him.

What plea could a mere occupier of land or a tenant from year to year thereof plead to the *scire facias ?*   Why should he plead *non tenure ?*   Could he plead that the heir had not been summoned ?   Could he plead that there are other occu-- piers or tenants from year to year of the land who had not been summoned, and who were liable to contribution with him for the payment of the debt ?   Would he be allowed to intervene between the mortgagor and mortgagee, and show that the mortgage had been paid ?   To ask these questions is to answer them.   It is believed that the uniform authority of the text books and of judicial decisions on this subject accord with the views here presented.

There was no service upon or notice given of the *scire facias* to Charles F. Grant, the mortgagor.   *Non est inventus* was no legal return, but the return should have been that " The within-named Charles F. Grant hath not anything in my bailiwick where or by which I can give him notice, as I am within commanded ; nor is the said Charles F. Grant found in the same."   Tidd, Pr. *Forms*, 475.

Upon such return an *alias scire facias* should have been issued, to which, if no notice could have been given to him by the sheriff, a like return as upon the first *scire facias* should have been made. Then, according to the decisions of our own courts, these two returns of *nihil* would have been equivalent to a return of *scire feci*, and a legal judgment might have been rendered against him; but no judgment could have been rendered on the *scire facias* which would have been binding upon Mrs. Grant or any other person. The conveyance of the land by Grant and wife to Susan Stafford before the suing out of the *scire facias* rendered it necessary that she should have been summoned as terretenant of the land in order that her estate therein might be bound by the judgment to be recovered on the *scire facias*, and to be taken in execution for the payment of the debt. The judgment was a nullity as to her, and also as to Mrs. Grant, and no prudent man would be justified in purchasing land under any such judgment and the proceedings thereon as that recovered against Grant himself. The reason for this is obvious, and is stated in Story on Equity Pleadings, viz.: "Courts of equity adopt two leading principles in determining the proper parties to a suit. One of them is a principle admitted in all courts, affecting the suitor's person and liberty as well as his property; viz.: that the rights of no man shall be finally decided in a court of justice until he has had full opportunity to appear and vindicate his rights. The other is that where a decision is made upon any particular subject matter, the rights of all persons connected with that decision and affected by it shall be provided for as far as they reasonably may be."

I have already remarked that the only parties to whom the judgment on the *scire facias* can be made to apply are Charles F. Grant, Samuel McCaulley, William B. Sparks and A. Poinsett. If the three last-named persons were in fact terretenants of the land mortgaged,— that is to say, persons who own the land or who had an estate in the land bound by the mortgage,—then this judgment bound that estate, and the purchaser at the sheriff's sale became entitled

to it.   If they had no such estate in the land, but were mere
-occupiers or tenants thereof from year to year, then nothing
passed from them by the sale or under the sheriff's deed.   In
fact, as we have already seen, the sheriff's deed did not pre-
tend to pass any estate to the purchaser, except such estate
and estates, and under such rents and services, as the said
·Charles F. Grant and terretenants had and held the same at
·or before the taking thereof in execution.   The sheriff's deed
-did not profess to pass any interest, right or estate of Mrs.
Grant, or of Susan Stafford.   As to them the deed was a
nullity, for the reason that they were not parties to the judg-
ment on the *scire facias* or to any of the proceedings had
thereunder.   It is not my purpose, however, nor is it within
my province, to declare the judgment as rendered invalid.   It
is a judgment of a court of competent jurisdiction and unre-
versed, and therefore binding upon all parties to it, and upon
.all persons since its rendition claiming under such parties.
This is the extent of its obligation ; this much and no more.

At the risk of repeating that which has been before in
substance said, I remark, in the language of the court in the
case of *Hall* v. *Tunnell,* 1 Houston, 326 ; that " A mortgage
between the mortgagor and mortgagee, so long as the former
·continues in possession of the mortgaged premises, is merely
a security for the payment of money, and does not absolutely
·convey the legal title to the premises ; but it is a lien on the
property of so high a nature that it is not devested by a sale
·on judgments subsequently obtained against the mortgagor ;
yet if the mortgagee is in possession under the mortgage,
:and the condition of it be broken, it is no longer in the power
of the mortgagor, nor of anyone claiming his title by virtue
·of a sale on such judgment, to recover the possession in eject-
ment.   His only right in such a case, as we have before said,
is to redeem the premises by paying the mortgage." I will
add that so differently is a mortgage in this State regarded
from what mortgages were originally considered in England
and in some of the other States of the Union, that in my
opinion a mortgagee out of possession could not enter nor

maintain an action of ejectment for condition broken in the mortgage.  The only way in which a mortgagee in this State can get lawful possession of mortgaged premises is by con-. sent of the mortgagor, being let into possession by him, or under proceedings had for foreclosure.  We, however, not-withstanding the mortgagor before foreclosure is the owner of both the legal and equitable estate, speak of his equity of redemption.  There are two modes of foreclosing mortgages. and barring an equity of redemption in this State.  The one is by bill in equity, and the other, under the statute, by *scire facias*, after the whole debt shall have been due for a period of one year.  An equity of redemption may be defined to be a right in equity of the mortgagor to have back the mort-gaged premises upon paying the mortgage debt.  In this State the mortgagor has a legal right to continue in posses-sion of the land until foreclosure, and if by any legal means. the mortgagee is in possession after condition broken, to have back the possession of the lands upon the payment of the debts.  An equity of redemption is not a mere right, but it is an estate in the land; for it may be devised, granted or entailed with remainders, and such entail and remainders may be barred in the manner prescribed for the barring of entails. It, therefore, cannot be considered as a mere right only, but. such an estate whereof there may be a seisin.  The person,. therefore, entitled to the equity of redemption is considered as the owner of the land, and a mortgage in fee is considered as personal assets.  1 Atk. 603.

I know of no text writer of authority, and no well con-sidered adjudged case, that denies that an equity of redemp-tion may be assigned or granted ; and I cannot conceive it to be possible that anyone should doubt the right of Grant and wife to grant or convey to Susan Stafford the premises in question, subject to the mortgage, to Sabilla A. Stone, and thereby to devest themselves of all their estate, legal and equitable, therein, and to invest her with the same.  If such be the case, then did not the right to pay the mortgage, and to have the entire estate in the land free from any incum-

brance or right, present or future, exist in Susan Stafford? And, if so, could that right also exist at the same time, either in whole or in part, in Mrs. Grant, who had joined her husband in the conveyance? It should be borne in mind that Susan Stafford was the grantee of the whole estate of Grant and wife, subject only to the payment of the mortgage debt, and not of the equity of redemption only. It follows, therefore, that if the grantee of an equity of redemption can redeem a portion, the grantee of both the legal and equitable estate may redeem. Can the grantee of an equity of redemption redeem?

Chancellor Kent (4 Kent, Com. 161) says: " The right of redemption exists, not only in the mortgagor himself, but in his heirs and personal representatives and assignee, and in every other person who has an interest in or a legal or equitable lien upon the lands." Bispham on Principles of Equity, 151, says: " In *Roscarrick* v. *Barton* it was said that the equity of redemption was a right as distinguished from an estate; but in the leading case of *Casbourne* v. *Scarf*, Lord Hardwicke decided that it was an estate; for, said he, it may be devised, granted or entailed with remainders; and such entail and remainders may be barred by fine and recovery— and, therefore, cannot be considered as a mere right only, but such an estate whereof there may be a seisin. This view of the equity of redemption has been particularly observed in the United States, where a mortgage is looked upon as a mere security for the debt, and the title is considered for most purposes as remaining in the mortgagor."

·In an anonymous case reported in 3 Atk. 213, where a bill was brought for the redemption of a mortgage, Lord Hardwicke said: " There never was a judge who sat in this court could be more disinclined than I am to allow a redemption where there has been a length of time incurred since the possession of the mortgagee of the premises in mortgage, especially in a case like the present where a prowling assignee, as the plaintiff is, admits that, for a very inconsiderable sum, he bought the equity of redemption, imagining, from

some knowledge of the law, he might be able to unravel a great number of circumstances; and by that means entitle himself to a redemption; and I should be very glad, in decreeing a redemption, that I could do it for the sake of the unfortunate family who were the original borrowers of the money; but though they have conveyed away all their right, yet, even in the case of an assignee of the equity of redemption, if there are circumstances which would induce the court to decree a redemption in favor of the representative of the mortgagor, the assignee who stands in his place will have the benefit of it." The bill in the case cited was brought fifteen years after the right to redemption accrued, and a decree was made in favor of the prowling assignee of the equity of redemption.

It may be that Grant was an unfortunate borrower of $2,500, for the payment of which he and his wife mortgaged these premises. Susan Stafford is no party to these proceedings. Although she was the owner of the fee at the time the *scire facias* upon the mortgage was sued out, it was not made known to her; and at any time after the mortgage was payable, she might have redeemed; for equity, in analogy to the Statute of Limitations, allows a period of twenty years in which to redeem. Her neglecting to redeem within that time cannot confer upon Mrs. Grant any right of redemption, for her husband and herself parted with such rights when they conveyed these premises and all their legal and equitable right therein to Susan Stafford. Will Susan Stafford hereafter appear in this court as a prowling assignee of Mr. and Mrs. Grant, seeking to redeem? Or has she already permitted the twenty years in which she might have redeemed to expire? The defendant as well as herself may perhaps be interested in these questions.

The counsel for the complainant, however, submits a proposition and relies upon numerous authorities, as he supposes, to sustain it; which proposition I will now consider. He says: "Admitting, therefore, that the complainant did join with her husband in conveying her equity of redemption

in the premises to Susan Stafford, yet the defendant, being a stranger to the release, can derive no advantage from it, nor as against the defendant is the complainant estopped from asserting dower."

This general proposition he discussed under two subdivisions: 1. A stranger to a release made by the wife can derive no advantage from it, nor as against him is she estopped from asserting dower. 2. It is a well settled rule that it is no defense to an action of dower that the widow has released her right of dower to a stranger.

I have examined the complainant's authorities and have, I believe, given them due consideration. The case of *Pixley* v. *Bennett*, 11 Mass. 298, seems to be a leading case, and to have been followed in most if not all the others. In that case the widow had released by deed — using the words, " give, grant, bargain, sell, alien, release and confirm " — all her right of dower in certain lands to third parties, strangers not owning or possessing the lands in which a dower was claimed. The action was one at law for dower *unde nihil habet*. Dower, when assigned, is an estate in lands, and may be granted by deed. Before it is assigned, it is not an estate in land, but simply a right to have an assignment. This right does not lie in grant, but can only be released, and a release can only be made to the person whose land is subject to the right, who is the tenant or person having the inheritance. The reason assigned by the court was that the deed relied on by the demandant showed no privity of estate. This may or may not have been a very good reason in the particular case. The defendant, I suppose, pleaded a release, which meant of course that the demandant had released to him. But the deed to a stranger could be no release to the defendant, and did not support the plea.

In some of the cases the deed has been relied on as an estoppel, and the courts have very properly said that it could not be so considered. The reason is obvious. Estoppels must be mutual and equally operative. It would be useless, however, in the view which I take of this case, to review all or

any considerable number of the authorities that have been cited, or which have application to the assignment of dower to a widow in the ·lands of her deceased husband. I will refer, however, to one other case (*Carter* v. *Walker*, 2 Ohio St. 339), which, I think, correctly states the law and is decisive of the rights of the complainant when those rights are considered in·the view which I take of mortgages and of the alienation of husband and wife of lands in this State subject to a mortgage lien. In January, 1831, Carter, " his wife not joining," mortgaged the premises to Matthew Lawler, empowering Davis B. Lawler, by a clause of the mortgage, to sell the property in default of payment of the mortgage debt. In June, 1831, the wife of Carter joined the husband in a deed of the same property, subject to the Lawler mortgage, to Henry Gassaway. Afterwards Davis B. Lawler, in final execution of his trust, conveyed the estate to Thomas B. Walker. Carter died in 1848. His widow claimed dower in the land as against the purchaser, Thomas B. Walker. The court, among other things, said " that Gassaway, who purchased the land subject to the mortgage by his deed from Carter and wife, had a title. . to the land free from the claim of dower, and subject only to the incumbrance of the mortgage to Lawler." The court held, also, that the entire interest of both Walker and Gassaway, of mortgagor and mortgagee,— a complete title,— passed to the purchaser free from any claim of dower. The objection that the complainant, the widow, asking the assignment of dower in the land, was not a party to the judicial proceedings (the mortgage having been foreclosed as against both Walker and Gassaway) nor to the mortgage, and was not therefore barred by the decree, was made in her behalf. It was answered by the court that it was not by the force of the judicial proceedings that she could be deprived of her rights of dower, but by her release to Gassaway.

Now, the only distinction between the present case and the case of *Carter* v. *Walker*, so far as respects the question of dower, was that Gassaway, the purchaser from Carter and wife subject to the mortgage, was made a party to the pro-

ceedings on foreclosure; and Susan Stafford, the purchaser from Mr. and Mrs. Grant, was not made a party to the proceedings under the *scire facias* against Grant. But, in the language of the court, "It is not by the force of the judicial proceedings" that Mrs. Grant can be deprived of her right of dower, but by her and her husband's conveyance to Susan Stafford. The fact that Susan Stafford was not made a party to the proceedings on *scire facias* could not reinvest Mrs. Grant with any estate, interest or right with which she had parted by her conveyance to Susan Stafford.

The concluding remarks of Justice Caldwell in the case of *Carter* v. *Walker* may be profitably considered. He says: "It would appear to me reasonable that where a person by conveyance has a complete title vested in him, he has a right to hold the property or to abandon it, at his pleasure; and that, whilst he has the title thus vested in him, he is the only person that can assert any valid claim to it. And this principle, in my opinion, would apply as well to the right of dower as any other interest in land. For, although it be an inchoate and contingent interest, yet it can be as completely released as any other, and whether we call the act of devesting the release of an interest or the extinguishment of a right, can have no effect upon this question. The doctrine requiring privity between the releasor and tenant in possession to bar dower might be attended with singular results in its application. Under this rule, if the person holding title were to get out of possession, and the land come to the possession of another, all the dower interest that had existed would revive against it. In this way a dozen dower interests might at once light upon the land, all to be devested the moment the person holding the title should assert his right. We have been referred to the cases of *Robinson* v. *Bates*, 3 Met. 40; *Pixley* v. *Bennett*, 11 Mass. 298; 3 How. (Miss.) 205, and other authorities where this doctrine of privity is asserted. It would be high presumption in me to say that the decisions given by those highly respectable courts were not illustrated by sound reason; but I cannot be charged with presumption

when I say that it is greatly above my comprehension to see the force of the reasoning on which those decisions are founded." The opinion concludes as follows : "A majority of the court are of opinion that, by the release to Gassaway, and the connection of the defendant with his title, the complainant is barred of any right of dower in the premises." The bill was dismissed, and as a consequence dower was refused.

Now, I hold in this case that it was not by virtue of any judicial proceedings upon the mortgage that Mrs. Grant was or is barred of dower, for she was no party to them ; but that she is barred by joining with her husband in the conveyance of their whole estate, legal and equitable, to Susan Stafford ; and that the nonjoinder of Susan Stafford in the proceedings on the mortgage, and the nonconnection of the defendant with the title of Susan Stafford, do not reinvest the complainant with any right or interest in respect to the premises, which she may have had but for that conveyance. That conveyance is made known to the court by the brief of her counsel in the cause. She must show to the court that she is entitled to relief, and she can only do so by showing the existence of some right, legal or equitable, of the enjoyment of which she is deprived. Instead of doing so she shows—not by her bill, it is true, but in the way indicated— that before filing her bill she had devested herself in the manner prescribed by law of such right; and the defendant shows, by answer and proof that, although she at one time might in a certain contingency have become entitled to such right, she has, by her own voluntary act, forever barred herself of the enjoyment thereof. Can it be possible that, knowing as I do, and as all the authorities upon the subject declare, that if Susan Stafford has the conveyance she is admitted to have, she will be entitled, if not barred by lapse of time or other laches, to file her bill in this court as grantee of Mr. and Mrs. Grant to redeem their lands, I must, nevertheless, grant the prayer of this bill ? Or, is there no way, not even by the admission of the parties themselves, that I am allowed to know or act in respect to these facts ?

But it is said Mrs. Grant may be allowed to file the bill for her alienee. It is not so filed, and there is no necessity that it should be so filed, because in this court an alienee or grantee can file a bill in his own name; and after this lapse of time I would not favorably consider a bill so filed in behalf of a person *sui juris* refusing or neglecting to file a bill in her own behalf. Although the law does not presume at what particular time Grant died, yet the presumption of his death does not arise until seven years after he was last heard from alive, which was in the year 1861. Mrs. Grant, therefore, in the absence of any valid objection to her right to have an assignment of dower, would not be barred of that right before the expiration of twenty years from that time, which will be some time in the year 1888. If any assignment of dower to her would be for the benefit of Susan Stafford, the assignee or alienee of herself and husband, then Susan Stafford, whose right to redeem commenced at the date of the deed to her from Grant and wife, March 2, 1858, if not earlier, from the time the mortgage became payable, and was not exercised by her up to February 15, 1879 (a period of nearly twenty-one years), and has not to this day been exercised,—would have a benefit under an assignment to another for her benefit, and indirectly, which she perhaps could not have to herself directly by filing a bill in her own name in proper time, because of the expiration of nearly twenty-four years, if not longer, during all which time she chose to delay the exercise of her right to redeem. How can this court lend itself to any such indirection, or be the instrument for the accomplishment of any such results?

Again; if there be a right in both Susan Stafford and Mrs. Grant to redeem, that right is not coextensive. Mrs. Stafford, by paying the mortgage debt and interest, would be entitled to have all the land as and for her own. Mrs. Grant, by redeeming, would be entitled to have only one third of the land assigned to her for dower, and that she would take subject to recoupment,—that is to say, not according to the present value of the land with the improvements thereon,

but according to the value at the time that her right to the assignment of dower accrued, less the improvements then made,—whereas, Mrs. Stafford, being the owner in fee, upon the discharge of the mortgage lien, would have title to the whole land as it exists and subject to no recoupment, for recoupment cannot be pleaded to the claim of the owner in fee. This is an additional reason why a bill could not be sustained in the name of Mrs. Grant for the benefit of Mrs. Stafford. A person having no right himself or herself cannot maintain an action in respect to anything for the use of another, although that other person may have a beneficial interest in the thing in respect to which the suit may be brought.

The principles stated by the complainant, and the authorities cited to sustain them, seemed to be taken from Scribner on Dower,—a work very useful as referring to cases upon any matter therein treated or relating thereto, but like many other text books, not in all things implicitly to be relied on without a careful examination of the authorities cited in support of the text. For example, on page 307, 2d ed. Vol. 2, he heads a subdivision of a subject of which he is treating thus, "Release to stranger, no bar of dower;" and in a note inserts these words of Coke: "In dower the tenant pleads release of the demandant made to such a tenant in *possessione tenementorum prædictorum existent.* And because he does not say that he was *tenens liberi tenementi,* it was held to be no plea, and adjudged for the demandant. *Anon.* Cro. Jac. 151. See Co. Litt. 266, *a;* Litt. § 495." Then, in the text, the author says: " It is well settled that it is no defense to an action of dower that the widow has released her right to a stranger;" and in a note appends all the cases cited by counsel for the complainant in his brief under the same head, including the cases of *Pixley* v. *Bennett,* 11 Mass. 298; *Robinson* v. *Bates,* 3 Met. 40; and *Littlefield* v. *Crocker,* 30 Maine, 192.

In another case referred to by Scribner, and found in the complainant's brief (*Gray* v. *McCune,* 23 Pa. 447, 451), Lewis, *J.,* sheds light upon these and some other cases by showing

what they mean to decide and what only they do decide.    I have already remarked in respect to the case of *Pixley* v. *Bennett* that it was only deciding that the evidence offered— to wit: a deed of release to a stranger—did not support the plea of a release as pleaded in that case, which was that the demandant had released to the defendant.    Judge Lewis says in the case above alluded to, speaking of a release of dower to a stranger: "It is true that a conveyance of her right of dower to a stranger, for a consideration moving from him to her, could not sustain a plea of a release to the defendant, who had no privity with such stranger.    The suit might, notwithstanding such conveyance to a stranger, be carried on for her use in the name of the defendant.    This is all that was decided in *Pixley* v. *Bennett*, 11 Mass. 298.    In Massachusetts a conveyance to a party out of possession passes no estate, and is therefore not evidence under the general issue in a writ of entry.    *Wolcot* v. *Knight*, 6 Mass. 420.    And, in an action of dower the tenant, who does not claim under such conveyance, and who is an entire stranger to the consideration, cannot set it up as a defense.    If it passed no right, it was clearly no defense.    If it did pass a right, the action might well be maintained for the benefit of the grantee or his assigns.    In either case the defendant, being a stranger to it, had nothing to do with it.    This is all that has any relevancy to this case in *Robinson* v. *Bates*, 3 Met. 40."    Maine was originally a portion of Massachusetts, and I presume the same law upon this subject prevailed in both States at the time *Littlefield* v. *Crocker*, 30 Maine, 192, was decided.    In that case land was held under a foreclosed mortgage made by a husband, in which the wife made no release of dower.    In a suit by her for dower against the assignee of the mortgagee, it was held that she was not barred by having, for the purpose of releasing dower, joined with her husband in his conveyance of the equity of redemption to a third person.    The court saying; "But to this conveyance the tenant is not a party or privy.    Estoppels are mutual.    In this case it would not be so ; the defense fails."    What is this but saying that

the conveyance offered in evidence did not support the plea. of a release to the defendant?

In none of the cases cited can it be claimed that there is. a strict analogy to the case under consideration. The law upon the subject of mortgages in the States where those decisions were made does not seem to be in every respect the same as the law of this State upon the same subject; although none of them, when properly interpreted, conflict. with the principles upon which I have indicated the decision of this case must rest. They seem, most of them at least, if not all, to have been suits at law and, as I suppose, of *unde nihil habet*, pleaded to issue and ruled with reference to the pleadings in such cases. In none of those States was there a separate equitable tribunal exercising independent equitable jurisdiction, and no authority has been cited by counsel in this case adjudged by such tribunal. This is a court that looks at the substance and not at the shadow of things, and which will not recognize anything as existing in right for any purpose or as against any person which a claimant shows never in fact existed, or which, if once existing, has been forever wholly and unconditionally parted with.

But this opinion has already been too extended. Much has been said which need not of necessity have been said. But I confess I was astonished when I heard it stated, in argument, that it was the practice in this county to take judgment at the first term upon the return of one *nihil* against a mortgagor and a return of service upon a mere occupier or tenant from year to year as terretenants of the premises; which statement was supported by the production of numerous cases from the proper office of such returns. I felt it not improper to express the opinion, of the correctness of which I have no doubt, that such a practice is without warrant in law. If such a practice prevail, the sooner it is abandoned the better for the security of titles. There cannot be one practice in Newcastle County, another in Kent, and still another in Sussex. Proper practice is law, and the law must be uniform throughout the State. If such practice as is.

alleged to exist in this county be law, then I confess that forty years of more or less diligent study of the law has in this respect availed me but little.