# INDIAN PROTECTIVE ASSOCIATION *v.* GORDON.

CORPORATIONS; ESTOPPEL; CONTRACTS.

1. A Delaware corporation organized under the general incorporation laws of that State has no corporate existence, and cannot be recognized by

the courts of this District as having the right to maintain a suit as a corporation, after proclamation by the governor of Delaware annulling its certificate of incorporation for nonpayment of franchise taxes assessed against it.

2. The Indian Protective Association, a corporation, which intervened in the proceedings instituted in the court of claims under the act of Congress of June 21, 1906 (34 Stat. at L. 325, chap. 3504), directing that court to distribute a fee among attorneys who had rendered services to certain Indians in the prosecution of a claim by the Indians against the government, is bound by a finding of that court that it was not entitled to participate in the distribution under a contract with certain of the attorneys, and making awards to such attorneys individually. (Following *Robertson* v. *Gordon*, ante, 539.)

No. 2096.   Submitted February 18, 1910.   Decided March 1, 1910.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia sitting as an equity court dismissing the bill of complaint to establish an interest in a certain fund.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is another of the suits growing out of the Maish and Gordon contract with the Indians of the Colville Reservation, and the award of the court of claims of fees due attorneys for services performed for said Indians, by authority of act of Congress of June 21st, 1906 (34 Stat. at L. 325, chap. 3504).

The court of claims found that the total value of services rendered to the Indians was $60,000, and they divided the same among several attorneys, making the following awards: Benjamin Miller, administrator of Maish, $6,000; Hugh H. Gordon, $14,000; Marion Butler, $20,000; Josiah Vale, $10,000; Daniel B. Henderson, $5,000; Heber J. May, $3,000; and Frederick C. Robertson, $2,000.

The bill of Indian Protective Association, a corporation organized under the laws of Delaware, making Gordon and Miller defendants, set out the original contract between Maish and Gordon and the Indians, the appropriation act of Congress di-

recting the court of claims to ascertain the actual value of the services rendered by the several attorneys claiming to have represented the Indians, and the judgment of the court of claims, before mentioned. It then alleged that in January, 1901, the said Gordon, for himself and as surviving partner of Maish and Gordon, entered into a contract with Daniel B. Henderson, who held it for complainant, and Heber J. May, whereby he employed them to assist him in the prosecution of the claim of the Indians, agreeing to pay them 25 per cent of the fee contemplated in the Maish and Gordon contract with the Indians, with the additional sum of $10,000; the same to be paid out of any appropriation which may be made for the payment of the Indian claim. That on January 23d, 1901, said Henderson and May assigned one third of the fee contracted for by them as aforesaid to Richard C. Adams. That afterwards, on September 3d, 1901, said May assigned his remaining interest in said fee to Adams, obligating himself to continue to perform the services that he had undertaken. That on September 4th, 1901, said Adams assigned all of his right, title, and interest therein to the Indian Protective Association. The payment of the awards of the court of claims to Gordon and Miller was enjoined, and the said fund was afterwards delivered to receivers, who hold the same pending the litigation respecting its distribution.

The bill claims that complainant is entitled to one fourth of the entire sum of $30,000, the aggregate award to Gordon, Miller, Henderson, May, and Robertson, making $7,500, and also to the $10,000, under the contract aforesaid, which may be credited by the $5,000 awarded to Henderson and May, leaving a balance due by Gordon and Miller of $9,500.

The answers do not deny the incorporation of the complainant, but allege that the charter had been annulled and declared void by proclamation of the governor of Delaware in accordance with law on January 21, 1908, which was some months before the filing of its bill. They deny the assignment by Henderson to Adams, and allege that he assigned all of his interest to Butler and Vale. They further allege that no award was made on the contract of Maish and Gordon with the Indians, but that the

same was made to all of the attorneys, irrespective of contract, and on a *quantum meruit* basis, as provided by the act of Congress, and that thereunder the award of $5,000 was made to Henderson, and $3,000 to May. It is alleged that all further claims are concluded by said award and judgment of the court of claims. The bill was dismissed, and complainant has prosecuted this appeal.

*Mr. Charles Poe, Mr. Benjamin S. Minor,* and *Mr. Hugh B. Rowland* for the appellant.

*Mr. Louis A. Pradt* and *Mr. Heber J. May* for the appellee.

*Mr. Gordon* appeared in proper person.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first question is as to the right of the Indian Protective Association to maintain the bill after the proclamation of the governor of Delaware had annulled its certificate of incorporation. The complainant does not deny the issuance of the proclamation of the governor, or the validity thereof. It claims the right to maintain the suit by virtue of sec. 40 of the General Incorporation Laws of the State of Delaware, a pamphlet copy of which has been produced and agreed upon as containing said laws. Sec. 40 reads as follows: "All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution bodies corporate, for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which said corporation shall have been established."

The only provisions relating to dissolutions to be found in this act are in secs. 39, 47, and 67. Sec. 39 provides for volun-

tary dissolution. Sec. 47 relates to dissolution and forfeiture by decree of the court of chancery. Sec. 67 provides for forfeiture for failure to commence business in two years. This corporation was not dissolved or forfeited under either of the foregoing sections. Referring to the corporation taxing act, passed on the same day, we find that sec. 10 provides that if any corporation thereafter created shall fail to pay the tax assessed against it under said law, "the charter of such corporation shall be void, and all powers conferred by law upon such corporation are hereby declared inoperative and void, unless the governor shall, for good cause shown to him, give further time for the payment of such taxes, in which case a certificate thereof shall be filed by the governor in the office of the state treasurer, stating the reasons therefor." Sec. 13 makes it a misdemeanor, punishable by fine or imprisonment, or both, in the discretion of the court, for any person or persons to exercise or attempt to exercise any powers under the charter after the issuing of the proclamation.

Sec. 16 provides that when a charter shall become inoperative or void by proclamation, or by operation of law, for nonpayment of taxes, the secretary of state may, upon satisfactory settlement by payment of taxes accrued, and penalty, permit the corporation to be reinstated, and entitled to all of its franchises and privileges.

We are of the opinion that the Indian Protective Association was not entitled to maintain this suit by virtue of the provisions of sec. 40 of the incorporation statute. It had not been dissolved in any of the ways provided therein. In fact it was not dissolved at all. By the proclamation of the governor, under the express provision of the franchise tax act, its incorporation became inoperative and void, that is to say, as if it had never existed. This was the penalty imposed for nonpayment of its taxes. The liberal rule of the incorporation act allowing dissolved corporations three years' continuance of existence for the purpose of winding up their affairs was not followed in the franchise act. Under it, as we have seen, it became an offense to exercise, or attempt to exercise, any corporate powers after the issue of the proclamation. The corporation was not dissolved by the proclamation; it was as if its certificate had never issued.

By paying the accrued taxes and penalty it could have reinstated itself as a corporation, and, by observing the law, continued the exercise of its franchises. This, a dissolved corporation could not do. The purpose of the law was to secure the payment of taxes, and this would be thwarted by allowing the corporation thereafter to continue its existence for three years as permitted in the case of dissolved corporations.

The Indian Protective Association might have prevented the issuance of the proclamation by compliance with the law; or, within two years, it might have been reinstated by compliance with the provisions of sec. 16. Having failed to avail itself of either mode of relief, the association lost all claim to recognition as a corporation for any purpose whatever. Having no corporate existence, it cannot be recognized to maintain this suit.

2. It is very doubtful, under the testimony, whether the assignment was ever made to the Indian Protective Association at all. The assignment under which it claims was in blank, and its name was not inserted therein until after the institution of this suit. Henderson appears, long prior thereto, to have assigned his interest in the fees to Butler and Vale. Nor does it appear that Henderson, while denying the assignment to Butler and Vale, has recognized the right of the association to the fee of $5,000, awarded him by the judgment of the court of claims, notwithstanding its offer to credit that sum or its claim in this case.

But assuming that the assignment was intended for the benefit of the association, when made, Henderson, who held it, was one of the four members of the association, and was its secretary, treasurer, general manager, and general attorney. As such he filed an intervention, in its name, in the proceeding before the court of claims. As the corporation, as such, had rendered no service to the Indians, the court of claims rightly denied it any participation in the benefits of the appropriation act. As Henderson and May, under whom the association claimed, had rendered services, the court of claims made awards to them of $5,000 and $3,000 respectively. Neither disclaimed, and the judgment was so entered.

Even if the association could be regarded as an existing corporation for the purpose of winding up its affairs, it would be bound by the judgment of the court of claims, by reason of the fact not only that that it was a party thereto, but also by its relations with Henderson. See *Robertson* v. *Gordon* (present term) ante, 539.

For the reasons given the decree will be affirmed, with costs.

*Affirmed.*

An appeal to the Supreme Court of the United States was allowed March 8, 1910, on application of the appellant.