LOUIS WAX *v.* RIVERVIEW CEMETERY COMPANY, a corporation of the State of Delaware.

426

(*January* 21, 1942.)

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*Joseph H. Flanzer* for plaintiff.

*Thomas Herlihy, Jr.,* for defendant.

Superior Court for New Castle County, No. 148, January Term, 1941.

RODNEY, J., delivering the opinion of the Court:

Before discussing the validity or legality of a judgment obtained by Scire Facias on two returns of nihil against a corporation whose charter had been repealed by Proclamation of the Governor, it is necessary to give some attention to the question as to whether our statutory proceeding of Scire Facias sur mortgage is applicable at all where the mortgage has been given by a corporation, and whether a valid judgment can be obtained in such proceedings by two returns of "nihil habet." We can thus, by separation, determine the exact effect of the repeal of the charter by the Proclamation of the Governor.

The plaintiff contends that the statutory provision for Scire Facias sur mortgage, Sec. 4857, Revised Code of 1935, contemplates merely such process against an individual mortgagor and not against a corporation. Our statute, in substantially its present form, has existed from sometime between the years 1726-1736. *Seals v. Chadwick*, 2 *Penn.* (18 *Del.*) 381, 45 *A.* 718. While it is true that at that early period few, if any, private corporations existed, and under the statute the Sheriff is required to make the process known "to the mortgagor, his heirs, executors, or administrators," yet from the time private corporations were first created in this State their corporate mortgages have been foreclosed in conformity with the cited statute, and the records abound with such cases. An instance of such foreclosure approved by the State and Federal Courts

is *Penn Mut. Life Insurance Co. v. Walton & Whann Co.,* 2 *Marvel* (16 *Del.*) 179, 42 *A.* 424. See *Woolley on Del. Pr., Sec.* 1362.

At common law Writs of Scire Facias were founded on some matter of record, and the professed object was to give some notice or warning to the party charged thereby. When the writ was served and notice given the return was "scire feci." When this notice could not be given, or, as it sometimes developed, was not intended to be given, the practice was early developed of making a return of "nihil habet." This return by the Sheriff meant that the defendant "hath not anything in my bailiwick where or by which I can give him notice, as I am within commanded; nor is the said [A.B.] found in the same." *Grant v. Jackson & Sharp Co.,* 5 *Del. Ch.* 404, *at page* 415. As expressed by *Sherer v. Easton Bank,* 33 *Pa.* 134, the return meant that the defendant "has nothing in the bailiwick, no dwelling-house, no family, no residence, and no personal presence to enable the officer to make the service required by the Act of Assembly." Upon the return of "nihil habet" the plaintiff could issue to the next ensuing term an alias writ of Scire Facias, and upon a similar return could take judgment. Two returns of "nihil habet" to successive Writs of Scire Facias have, in this State, ever been esteemed as equivalent to personal service. *Bauduy v. Bradun,* 1 *Harr.* (1 *Del.*) 182, 183. See also *Brown v. Wygant & Leeds,* 163 *U. S.* 618, 16 *S. Ct.* 1159, 41 *L. Ed.* 284. See notes in 94 *Am. Dec.* 237; 122 *Am. St. Rep.* 98; *Warder v. Tainter,* 4 *Watts* (*Pa.*) 270.

Indeed, at common law, while two returns of nihil were necessary in the Court of Kings Bench to constitute the equivalent of personal service, yet the existence of two writs gave little additional notice, for they were at one time sued out together by making the teste of the second writ

appear as if the first had been returned. In the Court of Common Pleas one return of nihil was sufficient (Tidds Pr. 1125; Anonymous 2 Salk 599, 91 Eng. Rep. 508), and this practice prevailed in some states (*Ingram v. Belk,* 2 *Stro.* (*S. C.*) 207, 47 *Am. Dec.* 591), and to some extent in the State of Delaware. See *Grant v. Jackson & Sharp Co.,* 5 *Del. Ch.* 404, where the practice to taking judgment on one return of nihil is severely criticized, but judgment on two such returns is fully approved.

One reason that has been assigned for the origin of the effect of two returns of nihil in a Scire Facias proceeding as equivalent to personal service was that the writ was founded on a matter of record of which the party already had notice, and that generally the process by the writ was but a continuation of the former proceeding. This, however, is not always true, for whether the process is a continuation of an existing proceeding, or the institution of a new proceeding, depends upon whether the Record upon which the writ is issued is a judicial record or otherwise. *Malsberger v. Parsons,* 1 *Boyce* (24 *Del.*) 254, 259, 75 *A.* 698.

Our statutory provisions for Scire Facias proceedings at law upon a mortgage have always provided for notice, where practicable, to the mortgagor, and another statute makes clear this intention. Sec. 4581 of Revised Code of 1935, provides: "In every case in which a writ of scire facias may by law be issued, it shall be served and returned in the same manner as is provided in case of an original summons * * *". And Sec. 4578 prescribes how a writ of summons may be served. A similar statute was, as early as 1837, construed by the Supreme Court of Pennsylvania, from which State we probably obtained our Act. In *Chambers v. Carson,* 2 *Whart.* (*Pa.*) 365, the Court held that the Act merely prescribed generally how the writ of Scire

Facias may be served, and not as to alter the practice when service can not be made. The Court said:

"But there is no alteration of the law here, as it stood before, in respect to the effect of the return of two nihils to the first and second, or alias writs of scire facias, which have ever been deemed equivalent to a return of scire feci."

With this construction we agree.

■ The general rule is that a Sheriff's return to a Writ of Scire Facias cannot be controverted or attacked in a collateral proceeding, but, if it be false, an action will lie against the Sheriff who made it. 24 R.C.L. 1321. *Hartman v. Ogborn,* 54 *Pa.* 120, 93 *Am. Dec.* 679; *Blythe v. Richards,* 10 *Sergt. & R.* (*Pa.*) 261, 13 *Am. Dec.* 672. In *Colley v. Latimer,* 5 *Sergt. & R.* (*Pa.*) 211, it was directly held that a judgment on two returns of nihil in a Scire Facias sur mortgage could not be collaterally impeached. *Warder v. Tainter,* 4 *Watts* (*Pa.*) 270.

■ And so we think that in 1919, when the mortgage here involved was given by a corporate mortgagor it could have been foreclosed by Scire Facias proceedings, and that judgment could have been obtained, where the facts justified it, by two returns of nihil. Such return would have meant that the corporation had nothing in the bailiwick of the officer by which notice could be given, and that the officer serving the writ could find no officer, agent or employee of the corporation of such character as had been designated by the law, upon whom service of the process could be made.

The plaintiff, however, contends that in 1925 an Act was passed which so enlarged the service of process on corporations that thereafter no return of "nihil habet" would be proper on a Writ of Scire Facias.

In 1925 the General Corporation Law was amended as

to service of process. This law had provided for such service on the President, or if he resided out of the State, upon the Secretary or one of the Directors, by leaving a copy at the dwelling house of the Secretary, or one of the Directors, or at the principal office or place of business of the corporation. The amendment of 1925, Vol. 34, page 284, c. 112, amending Rev. Code 1915, § 1962, added also the resident agent of the corporation as one upon whom process might be served, and also provided as follows:

"In case the officer whose duty it is to serve legal process, cannot by due diligence serve such process in any manner provided for by the foregoing paragraph, it shall be lawful to serve such process against such corporation upon the Secretary of State, and such service shall be as effectual to all intents and purposes as if made in any other ways hereinabove provided for * * *." Section 12.

We think that the increasing liberality in providing additional means for the service of process is for the benefit of those having the need of such process, and where such additional means are purely permissive they do not abrogate an established right. Indeed, in many cases the permissive service upon the Secretary of State may not add any additional means of service. Under the law a Scire Facias sur mortgage must be commenced in the county where the land is located, and the writ ordinarily is directed to the Sheriff of that county. In such case, if the Secertary of State could not be found in that county, no service could be made upon him under that writ. The right to obtain a judgment upon two returns of "nihil habet" in a Scire Facias proceeding was expressly not passed upon in *Home Owners Loan Corporation v. Hammond*, 2 *Terry* (41 *Del.*) 419, 24 *A.* 2d 429. That decision only held that a writ in such case could issue to another county of the State where the mortgagor actually resided,

under Sec. 19, Art. IV of the Constitution, which provides that process may be issued in either county into every county. We are of the opinion that the provisions of Sec. 2080, Revised Code of 1935, do not present an exclusive method of procedure.

We must now consider the effect of the Proclamation of the Governor declaring the forfeiture of the Charter of Mundy Holding Company (the defendant mortgagor in the foreclosure proceedings) for non-payment of franchise taxes.

The law under which the forfeiture was declared is commonly called the Franchise Tax Law, and is now found as Sec. 105, Revised Code of 1935. It provides, in part, that if a corporation to which the section applies "shall for two consecutive years neglect or refuse to pay the State any franchise tax or taxes * * * [for which it is liable] the charter of such corporation shall be void, and all powers conferred by law upon such corporation are declared inoperative * * *."

The succeeding section provides that the Tax Department shall annually report to the Governor a list of corporations which have so failed for two years to pay such taxes and provides:

"The Governor shall forthwith issue his proclamation declaring that the charters of these corporations are repealed."

Before discussing the rights of a proclaimed corporation under the expanded and liberalized statutes allowing its reinstatement after proclamation, it is well to consider the status of the corporation after its proclamation. In *Indian Protective Association v. Gordon,* (1910) 34 *App. D.C.* 553, affirmed without opinion by Supreme Court, 225 *U.S.* 698,

32 *S. Ct.* 839, 56 *L. Ed.* 1262, the Court held that the provisions of Sec. 40 of the Delaware General Incorporation Act continuing certain "dissolved" corporations for a period of three years, to wind up their business, did not include a corporation whose charter had been proclaimed as forfeited by the Governor for non-payment of taxes. The Court said:

"By the proclamation of the governor * * * its incorporation became inoperative and void, that is to say, as if it had never existed."

This was followed in 1912 by *Harned v. Beacon Hill Real Est. Co.,* 9 *Del. Ch.* 411, 84 *A.* 229. Here the Supreme Court of Delaware held that a company whose charter had been proclaimed forfeited by the Governor for non-payment of taxes was not entirely dead, even after three years from the proclamation, and appointed a receiver to wind up its affairs, and the corporation itself was held a proper defendant to the proceedings. The cited case held that the corporation, while dissolved, was sufficiently alive and existent to be the owner of real estate. The effect of this decision, followed by *Townsend v. Delaware Glue Co.,* 12 *Del. Ch.* 25, 103 *A.* 576, substantially destroys the construction of the Indian Protective Association case. See *Big Sespe Oil Co. v. Cochran,* (9 *Cir.*) 276 *F.* 216, 223, and *Tradesmen's National Bank & Trust Co. v. Johnson,* (*D. C.*) 54 *F. 2d* 367, at page 369.

It must constantly be borne in mind that the Franchise Tax Act is purely a revenue measure. When first adopted in 1899, Vol. 21, p. 303, it was entitled "An Act to Raise Revenue for the State by Taxing Certain Corporations." The Act provided that upon failure to pay the tax for two consecutive years the charter of the corporation should, upon proclamation, "be void, and all powers conferred by law upon such corporation are hereby declared

inoperative and void * * *." The two words "and void" as last appearing were removed in 1929, Vol. 36, p. 27, but otherwise the provision has remained as originally written. The language of the Act seems strong, but it is quite apparent that the word "void" was never intended in the sense of absolutely invalid, for there has always been provision for reinstatement. This, of course, could not occur if the charter had become absolutely void. By Sec. 16 of the original Act, Vol. 21, p. 309, the Governor, with the advice of the Attorney General, could within two years permit the corporation to be reinstated and entitled to all the franchises and privileges. This reinstatement was, of course, of the old corporation, for the Governor, as such, would have no power to create a new one. This provision was continued in the revenue statute in 1901, Vol. 22, p. 29, and carried into the Code of 1915 as Sec. 118. It was repealed in 1929, Vol. 36, p. 29, because in 1927, by Vol. 35, p. 251, the provisions had been carried into the General Corporation Law by general provisions for renewal, extension or restoration of all charters, whether proclaimed for non-payment of taxes or otherwise.

In this Act of 1927 all provisions that the restoration of its charter should be predicated on any permissive feature on the part of the Governor and Attorney General were removed, and all limit of time abandoned, so that any corporation whose charter had been proclaimed as forfeited for non-payment of taxes may, upon compliance with certain provisions, and upon payment of the taxes due, obtain the restoration or revival of its charter with all the rights, franchises, priveleges and immunities it formerly held. The tax itself does not accrue during the period the charter is inoperative. *State v. Surety Corp. of America,* 19 *Del. Ch.* 17, 162 *A.* 852.

We are not dealing with a statute like that of

Illinois, which was considered in *Chicago Title & Trust Co.
v. 4136 Wilcox Bldg. Corp.*, 302 *U. S.* 120, 58 *S. Ct.* 125,
127, 82 *L. Ed.* 147. There the corporation which had been
legally dissolved could not be revived, and the Court said
"its dissolution puts an end to its existence * * * which
may be likened to the death of a natural person." Under
our taxing statute we think that a corporation which has
been proclaimed for non-payment of taxes is not completely
dead. It is in a state of coma from which it can be easily
resuscitated, but until this is done its powers as a corpora-
tion are inoperative, and the exercise of these powers is a
criminal offense. It still can serve as repository of title
and as obligor of a debt.

The great weight of modern decisions construing tax
Acts similar to our own hold that so long as there is a statu-
tory right to be reinstated, the proclamation of forfeiture
for non-payment of taxes does no more than forfeit the
corporate right to do business, but does not extinguish the
corporation as a legal entity. *Hibernia Securities Co. v.
Morey*, 23 *Cal. App.* 2d 482, 73 *P.* 2d 939; *Deschutes Co. v.
Lara*, 127 *Or.* 57, 270 *P.* 913; *Held v. Crosthwaite*, (2 *Cir.*)
260 *F.* 613; *Reade v. Broadway Theatre Co.*, 99 *N. J. Eq.*
282, 132 *A.* 477; *Finch v. Finch*, 68 *Cal. App.* 72, 228 *P.*
553; *State ex rel. Bowen v. Superior Court*, 135 *Wash.* 315,
237 *P.* 722.

In *Mathews v. Life Ins. Co.*, 284 *Mich.* 352, 279 *N. W.*
858, *Hazard v. Park*, (8 *Cir.*) 294 *F.* 40, and *Globe Construc-
tion Co. v. Yost*, 173 *Wash.* 522, 23 *P.* 2d 892, 894, under
statutes analogous to our own, corporations which had had
their charters forfeited for non-payment of taxes were
recognized as proper defendants in foreclosure proceedings.

In *Watts v. Liberty Royalties Corporation*, 106 *F.* 2d
941, 944, the Circuit Court of Appeal of the Tenth Circuit

construed the present Delaware Statute, now considered by us, and reached the same conclusion. In the last cited case it was held under our Delaware Act that "so long as a corporation may be reinstated by the payment of delinquent fees and have validated all of its acts that were done while its powers were suspended, the corporation is not dead. Its powers are only in suspension * * *."

It is true that in the present case the corporate charter was proclaimed as forfeited by the Governor for non-payment of taxes, on January 23, 1924. It is also true that at that time the statutory period of reinstatement prescribed for such action within two years. In 1927, and while the bond and mortgage existed, and before foreclosure, the statute was changed and has since allowed such action without limitation of time.

It appears from the statement of facts that after giving the mortgage the corporation conveyed the property covered thereby, with its equity of redemption, to a third party, and at the time of the foreclosure had no assets whatever which could be administered by a receiver, and no known officer, agent, director or stockholder.

Keeping in mind that we are dealing with a creditor having no interest in the corporation, except as a creditor holding its bond and mortgage, and that the statute providing for the revocation of the charter is a revenue Act permitting reinstatement upon payment of the tax, we cannot conclude that the legislature intended to penalize the creditor and destroy its rights.

We think the corporation was a proper defendant in the foreclosure proceedings, and, from the reasons assigned to us, see no such legal imperfection of the title as would cancel the contract of sale.

Judgment will be entered for the defendant.