**M.A.S., INC., Plaintiff,**
v.
**VAN CURLER BROADCASTING
CORP. et al., Defendants.**

Civ. A. No. 3579–69.

United States District Court,
District of Columbia.

April 12, 1973.

Hillel Abrams, Silver Spring, Md., for plaintiff.

A. Slater Clarke, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

FLANNERY, District Judge.

In this action the plaintiff corporation alleges disturbance of possession, conversion and interference with the conduct of business. There is not complete diversity of citizenship, but the court has jurisdiction over this local matter because the action was filed before the effective date of the District of Columbia Court Reorganization Act of 1970.[1]

The defendants Read and R.K.O. Stanley Warner Theaters filed a motion to dismiss which raises the issue whether a District of Columbia corporation whose articles of incorporation have been revoked for failure to pay the required annual report fee may maintain an action which was instituted prior to the revocation. In a decision dated November 19, 1972, York and York Construction Co. v. Alexander,[2] the District of Columbia Court of Appeals held that D.C.Code § 29–941(b) (1967)[3] precludes the maintenance of such an action until the necessary fees are paid. Sound policy requires the utmost deference to that decision because it represents the interpretation of a local statute by the highest court of the District of Columbia. However, if the District of Columbia Court of Appeals were confronted with the circumstances of the present action, it probably would reach a conclusion contrary to the *York* decision. Consequently, in the present case this court need not follow the *York* decision, and the plaintiff corporation may maintain its action without paying the annual report fee.

### I

In September 1971 the plaintiff's articles of incorporation were revoked for the plaintiff's failure for two consecutive years to file an annual report and pay the annual report fee of ten dollars.[4] Although a dissolved corporation may be reinstated upon filing of the past due reports and payment of the fees,[5] the plaintiff does not wish to be reinstated because the corporation is no longer in business. Apparently, a petition for reinstatement is the only procedure by which past due fees may be paid.

The question whether the plaintiff corporation can maintain this action after its articles of incorporation have been revoked requires close examination of the interplay between three provisions of the District of Columbia Code. Section 29–938 describes the basis and procedure for revocation of the articles of incorporation. Subsection (d) of that section provides:

(d) All domestic corporations the articles of incorporation of which are revoked by proclamation . . . shall nevertheless be continued for the term of three years from the date of such revocation . . . bodies cor-

---

1. Pub.L.No.91–358, tit. I, 84 Stat. 473 (July 29, 1970). Prior to the effective date of the Court Reorganization Act, the United States District Court for the District of Columbia, in addition to its jurisdiction as a United States district court, had original jurisdiction of all "civil actions between parties, where either or both of them are resident or found within the District . . . ." and where the damages claimed did not exceed the sum of $10,000. Act of Dec. 23, 1963, Pub. L.No.88–241, § 1, 77 Stat. 482 (formerly codified as D.C.Code § 11–521(a)(1) (1967)); *id.*, 77 Stat. 489 (formerly cod-

ified as D.C.Code § 11–961(a) (1967)). The plaintiff filed the present action in 1969, claiming damages of $100,000. The Court Reorganization Act provides that the district court retains jurisdiction over civil actions begun in the court prior to the effective date of the Act. D.C.Code § 11–501(1) (Supp. V, 1972).

2. 296 A.2d 710 (D.C.App.1972).

3. Note 8 *infra* and accompanying text.

4. *See* D.C.Code §§ 29–932, 29–936(d), 29–937, 29–938 (1967).

5. *Id.* § 29–938d.

porate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to collect their assets . . . but not for the purpose of continuing the business for which such corporation shall have been organized: Provided, however, That with respect to any action, suit, or proceeding begun or commenced by or against a corporation prior to such revocation . . . and with respect to any action, suit, or proceeding begun or commenced by or against such corporation within three years after the date of such revocation . . . such corporation shall only for the purpose of such actions, suits, or proceedings so begun or commenced be continued bodies corporate beyond said three-year period and until any judgments, orders, or decrees therein shall be fully executed.[6]

Another provision relating to revocation of the articles of incorporation appears in Section 29–931i which provides:

Survival of remedy after dissolution. The dissolution of a corporation . . . by proclamation of the Commissioners for failure to pay annual report fees or file annual reports as provided in the chapter, . . . shall not take away or impair any remedy available to or against such corporation, . . . or any right or claim existing, or any liability incurred, prior to such dissolution if suit or other proceeding thereon is commenced within two years after the date of such dissolution. Any suit or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. . . .[7]

And finally there is Section 29–941(b) which provides:

(b) No corporation required to pay a fee, charge, or penalty under this chapter shall maintain in the District of Columbia any action at law or suit in equity until all such fees, charges, and penalties have been paid in full.[8]

Without referring to Section 29–931i, the District of Columbia Court of Appeals in York & York Construction Co. v. Alexander [9] confronted the apparent inconsistency between Sections 29–938(d) and 29–941(b). The court held, first, that these two statutes are not inconsistent because Section 29–938(d) merely preserves corporate status for certain limited purposes, whereas Section 29–941(b) precludes the maintenance of an action by any corporation which has not satisfied its statutory financial obligations.[10] Even if the statutes were inconsistent, the court held, the "more specific mandate" of Section 29–941(b) would prevail over the general language of Section 29–938(d).[11] Thus, under York, a corporation whose articles of incorporation have been revoked may not maintain an action until the necessary fees are paid.[12]

However, nowhere in the York opinion did the court mention Section 29–931i. Since Section 29–931i appears unexpectedly in a part of the Code which pre-

---

6. Id. § 29–938(d).

7. Id. § 29–931i.

8. Id. § 29–941(b).

9. 296 A.2d 710 (D.C.App.1972). After the action was filed in York, the plaintiff corporation in that case was dissolved by proclamation, evidently for failure to file the annual reports and pay the annual report fees. The trial judge dismissed the action pursuant to Section 29–941(b). Immediately thereafter, the plaintiff corporation sought and was granted reinstatement. The court of appeals allowed the original action to be revived even though the statute of limitations had expired before the corporation was reinstated. Id. at 715.

10. Id. at 713.

11. Id.

12. When confronted with a corporation in this situation, the trial judge should continue the action to allow the corporation a reasonable time to seek reinstatement by paying the appropriate fees. Id. at 714–715. If the fees are not paid within a reasonable time, the action should be dismissed. Id. at 715 n. 14.

cedes the section on revocation proceedings, it is quite possible that the court simply overlooked Section 29–931i. Sections 29–938 to 29–938d relate generally to "proclamation of revocation," an administrative proceeding. Sections 29–931 to 29–931i appear 12 pages earlier and relate generally to "involuntary dissolution," a court proceeding rather than an administrative proceeding. But tucked away in Section 29–931i is a specific reference to dissolution "by proclamation of the Commissioners for failure to pay annual report fees. . . ."

In view of the specific reference in Section 29–931i to dissolution by proclamation for failure to pay annual report fees, Section 29–931i must be read in conjunction with Section 29–938. Together, these two sections prescribe the consequences of revocation for failure to pay annual report fees. Section 29–938(d) preserves corporate status "for the purpose of prosecuting and defending suits." Section 29–931i explicitly mandates that revocation for failure to pay annual report fees shall not impair a corporation's court remedies in situations like the present case.[13] To dismiss a corporation's court action solely for failure to pay annual report fees, as required by *York's* interpretation of Section 29–941(b), certainly impairs the corporation's remedies and directly contravenes the express provision of Section 29–931i.

The *York* court held that any conflict between Sections 29–938(d) and 29–941(b) must be resolved in favor of Section 29–941(b) because the latter section contains the "more specific mandate."[14] However, when Section 29–941(b) is compared with Section 29–931i, Section 29–931i emerges as the more specific mandate. Section 29–931i refers specifi-

cally to court actions by corporations which have been dissolved by proclamation, whereas Section 29–941(b) refers only to court actions in general. If Section 29–941(b) is construed to preclude an action by a corporation which has been dissolved for failure to pay annual report fees, then Section 29–931i is completely nullified. If instead, Section 29–931i is construed as a narrow exception to Section 29–941(b), then Section 29–941(b) remains a viable sanction against the failure to pay all statutory fees except the annual report fee.[15]

The problem in *York's* interpretation of Section 29–941(b) is highlighted by the facts of the present case where the corporation does not desire reinstatement to active status. The *York* decision requires the corporation to pay the past due annual report fees before the present action can proceed. But the only way the corporation can pay the past due fee is to apply for reinstatement.[16] Once it is reinstated, the corporation is no longer a corporation dissolved by proclamation within the meaning of Section 29–931i. Thus, the effect of the *York* decision is to preclude the maintenance of any action by any corporation which has been dissolved by proclamation. This result directly contravenes the explicit mandate of Section 29–931i.

■ Moreover, it appears that Section 29–941(b) was not intended to apply to a corporation whose articles of incorporation have been revoked for failure to pay annual report fees. Section 29–941(b) applies only to corporations "required to pay a fee." Section 29–938 prescribes the appropriate action to be taken against a corporation which fails to pay the annual report fee for two

13. Section 29–931i applies to the present case. The action in this court is a "remedy" available to the plaintiff corporation. The transaction giving rise to the alleged liability occurred prior to the date of revocation. The requirement that the action be "commenced within two years" after revocation certainly applies to an action commenced prior to the revocation.

It would be absurd to protect only those actions filed after revocation and exclude actions filed prior to revocation.

14. Note 11 *supra* and accompanying text.

15. Section 29–936 lists over 20 fees other than the annual report fee.

16. *See* D.C.Code § 29–938d (1967).

consecutive years. Once this action has been taken and the articles of incorporation have been revoked, the corporation is no longer "required to pay a fee" unless it applies for reinstatement. If the corporation does not seek reinstatement, then it is not a corporation "required to pay a fee" within the meaning of Section 29–941(b).[17]

Therefore, this court's own interpretation of the statute is that a corporation in the plaintiff's situation can maintain an action, subject only to the requirements of Sections 29–931i and 29–938(d).

## II

Having reached a conclusion contrary to the *York* decision, the court must decide whether it is free to follow its own interpretation of the statute or whether it must defer to the statutory interpretation of the District of Columbia Court of Appeals in the *York* decision.

The precedential value of District of Columbia Court of Appeals decisions was considered by the United States Court of Appeals for the District of Columbia Circuit in Holly v. United States.[18]

In that case the Government urged the federal court of appeals to defer to the local court of appeals' determination that a local criminal statute was constitutional. The federal court declined to do so because a federal constitutional issue was at stake in *Holly*.[19] However, the court indicated that "if the question involved only the construction of a statute unrelated to constitutional considerations, sound policy might support this request."[20]

▉ Regardless of whether this court has the power to interpret a District of Columbia statute in the first instance,[21] the policy underlying the District of Columbia Court Reorganization Act of 1970[22] requires the greatest deference to decisions of the District of Columbia Court of Appeals. The clear mandate of the Court Reorganization Act is that the District of Columbia Court of Appeals is the "highest court of the District of Columbia."[23] If jurisdiction in the present action were based on diversity of citizenship, under the *Erie* doctrine[24] this court surely would apply the local law as articulated by the District of Columbia Court of

17. This conclusion does not resolve entirely the statutory ambiguity. A corporation is required to pay a report fee each year, but it is subject to dissolution only if it fails to pay the fee for two consecutive years. *Id.* §§ 29–936(e), 29–937, 29–938a. Consequently, there is a one-year period during which the corporation is delinquent in payment but has not been dissolved. During that year, the corporation is still "required to pay a fee." Therefore, Section 29–941(b) might preclude the maintenance of an action by the corporation during the year immediately preceding dissolution.

18. 150 U.S.App.D.C. 287, 464 F.2d 796 (1972).

19. *Id.* at 290, 464 F.2d at 799.

20. *Id.*

21. It can be argued that federal district courts have the inherent power to interpret District of Columbia statutes because District of Columbia statutes are enacted by Congress rather than by a state legislature. *See generally* Cohn, Relationships between Federal and Local Courts after

Court Reorganization, 39–40 D.C.Bar.J. 49, 60–62 (Oct.–Feb. 1973); Williams, District of Columbia Court Reorganization, 1970, 59 Geo.L.J. 477, 494–98 (1971).

22. Pub.L.No.91–358, tit. I, 84 Stat. 473 (July 29, 1970).

23. D.C.Code § 11–102 (Supp. V, 1972); *see* Holly v. United States, 150 U.S.App. D.C. 287, 290–91, 464 F.2d 796, 799–800 (1972) (Tamm, J., concurring); Bland v. Rodgers, 332 F.Supp. 989, 991 (D.D.C. 1971); M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C.App.1971); Williams, *supra* note 21, at 492–94. *See also* Luck v. Baltimore & O. R. R., 352 F.Supp. 331, 334 (D.D.C.1972) (federal court of appeals is no longer the highest court of the District of Columbia).

24. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The *Erie* doctrine requires a federal court sitting in a diversity action to apply the substantive law of the state in which it sits. *Id.* at 78, 58 S.Ct. 817; Hanna v. Plumer, 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

Appeals.[25] No different result should obtain merely because the present action was filed when this court had jurisdiction over purely local matters. A major purpose of the *Erie* doctrine is to avoid conflicting decisions within a single jurisdiction.[26] That purpose is equally applicable in this action which was filed before the Court Reorganization Act when the local and federal courts of the District of Columbia shared the responsibility for the local administration of justice. Indeed, this court's local jurisdiction over the District of Columbia is all the more reason to defer to rulings of the District of Columbia Court of Appeals. Allowing a local statute like the one involved in this case to have different constructions in the local and federal courts in the District of Columbia would result in a confused and unworkable judicial system.[27] Therefore, a federal district court sitting as a local court in the District of Columbia should defer to the District of Columbia Court of Appeals' interpretation of local statutes, at least where federal statutory or constitutional issues are not involved.

■ However, this policy of deference does not finally resolve the issue at hand. Despite the respect to which District of Columbia Court of Appeals decisions are entitled, the *York* decision need not govern the present action. The *York* case differed from the present action in two important respects. First,

the corporate plaintiff in this action, unlike the plaintiff in *York*, does not desire reinstatement. Second, and more importantly, the *York* court apparently did not consider the interplay between Section 29–931i and the other code provisions relating to the failure of a corporation to pay the annual report fee. As discussed earlier, these two factors are crucial to a thorough analysis of the statutory scheme.[28] If the District of Columbia Court of Appeals were confronted with a plaintiff who did not desire reinstatement, and if Section 29–931i were brought to that court's attention, it is unlikely that the District of Columbia Court of Appeals would adhere to the *York* decision. In the present action, there is no reason for this court to follow the *York* decision blindly when confronted with factors which were not considered in the *York* opinion and which, if they had been considered, probably would have produced a contrary result.[29]

■ In the analogous situation where a federal court in a diversity action must apply state law under the *Erie* doctrine, the federal court often faces a dilemma in ascertaining state law where local court decisions are unclear. In such situations, the court may decline to follow a decision of the highest court of the state if the federal court can say with some assurance that the highest state court itself would not follow the old decision.[30] Similarly, in the present

---

25. *See* Cohn, *supra* note 21, at 54–57; Williams, *supra* note 21, at 494–95.

26. Hanna v. Plumer, 380 U.S. 460, 467, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *see* Erie R. R. v. Tompkins, 304 U.S. 64, 74–77, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

27. *See* Williams, *supra* note 21, at 496–98.

28. *See* notes 9–17 *supra* and accompanying text.

29. It might be suggested that this court abstain until the parties obtain a resolution of this issue from the District of Columbia courts. *See* Cohn, *supra* note 21, at 61. *See generally* Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (explanation of abstention doc-

trine); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (explanation of abstention doctrine). However, difficulty in ascertaining state law, standing alone, does not warrant abstention. *See, e. g.,* Meredith v. City of Winter Haven, 320 U.S. 228, 236, 64 S.Ct. 7, 88 L.Ed. 9 (1943); 1A J. Moore, Federal Practice ¶ 0.309 [3], at 331–32 (1965). Moreover, the parties may not be able to obtain such an advisory opinion from the local courts. *See* Cohn, *supra* note 21, at 61.

30. This problem usually arises where a state supreme court decision is on point but is considerably outdated. *See, e. g.,* Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199

action, this court need not follow the *York* decision where, in view of factors not considered in the *York* opinion, it appears that the District of Columbia Court of Appeals itself would not follow that decision.

For the foregoing reasons, the plaintiff corporation may maintain this action without paying the annual report fee. It is, therefore, this 12th day of April, 1973,

Ordered that the motion to dismiss filed by the defendants Read and R.K.O. Stanley Warner Theaters be, and it hereby is, denied.

(1956) (federal court in 1955 faced with a 1910 state supreme court decision). Instead of adhering blindly to the old decision, the federal court should evaluate that decision in the light of subsequent dicta, ambiguities, legislative movements, trends in other jurisdictions and similar factors which indicate that the old decision may be no longer viable. *See, e. g., id.* at 204, 76 S.Ct. 273; *id.* at 209–12, 76 S.Ct. 273 (Frankfurter, J., concurring) ; Moore v. Illinois Cent. R. R., 312 U.S. 630, 633, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). "Although there must be a faithful adherence to state substantive law in non-federal matters, it should be a wise and discerning loyalty. Blind adherence to a state decision . . . will result in injustice and a perversion of the state law which the federal court sets out to apply." 1A J. Moore, Federal Practice ¶ 0.309 [1], at 3323 (1965). *See also* C. Wright, Law of Federal Courts § 58, at 238–39 (1970).

Of course the federal court cannot contravene a decision of the highest state court merely because of a disagreement over policy matters. *See, e. g.,* Meredith v. City of Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 88 L.Ed. 9 (1943) ; West v. American Tel. & Tel. Co., 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940). However in the *Meredith* case the Court acknowledged that a federal court may decline to follow a decision by the highest state court if "it can be said with some assurance" that the state court will not follow the decision in the future. 320 U.S. at 234, 64 S.Ct. at 11.