**TOWN VIEW, INC., Plaintiff**

**v.**

**CHARLES H. YOUNG and NEIL RICHARDSON, Defendants**

Civil No. 753-1977

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

August 18, 1978

FREDERICK D. ROSENBERG, ESQ. (BAILEY, WOOD & ROSEN-BERG), St. Thomas, V.I., *for plaintiff*

CHARLES S. WAGGONER, II, ESQ., St. Thomas, V.I., *for defendants*

FEUERZEIG, *Judge*

### MEMORANDUM OPINION

This case comes before the court on defendants' motion to dismiss for failure of the plaintiff corporation to pay its franchise tax, which causes this court to resolve an apparent conflict between two sections of the Virgin Islands corporation law, 13 V.I.C. §§ 285 and 533. The plaintiff, Town View, Inc., instituted this action for declaratory judgment against Charles H. Young and Neil Richardson. The defendants moved to dismiss, stating that Town View was involuntarily dissolved by the Lieutenant Governor for failure to pay franchise taxes for 1975, 1976, and 1977, and, therefore, was prohibited from commencing any action absent reinstatement. 13 V.I.C. § 533.[1] The plaintiff opposed the

---

[1] *§ 533. Failure to pay tax; penalty.*

(a) No corporation may commence or maintain any action in any court if it has not paid its annual franchise tax last due. A certificate of the payment of such annual franchise tax, or any duplicate of such certificate under the seal of the Commissioner of Finance, shall be prima facie evidence of such payment. The Commissioner of Finance shall issue such certificate upon request.

(b) Failure of any corporation to pay its annual franchise tax for a period of one year from and after the date when such payment first became due, shall be prima facie evidence of the insolvency of such corporation and the fact of such insolvency may be shown by the government of the Virgin Islands or by any private person or corporation.

(c) The Government Secretary, upon notification by the Commissioner of Finance that any corporation has neglected for a period of two years to pay its annual franchise tax, shall—

(1) if the delinquent corporation is a domestic corporation make a notification upon the records of his office that such corporation is dissolved and it shall thereupon be dissolved and the directors of such corporation shall hold title to the property of the corporation as trustees for its stockholders and creditors to be disposed of under appropriate court proceedings; or

(2) if the delinquent corporation is a foreign corporation, make a notification upon the records of his office that the authority of such corporation to do business in the Virgin Islands is revoked and it shall thereupon be revoked.

motion to dismiss stating that 13 V.I.C. § 533 is not applicable because "it obviously applies to a going concern which has not paid its franchise taxes," and because, pursuant to 13 V.I.C. § 285, dissolved corporations are continued for a period of three years from the date of their dissolution for "the purpose of prosecuting and defending actions by or against them."[2]

Because of the importance of the question presented and because of the apparently irreconcilable commands of sections 533 and 285, the court requested oral argument on the defendants' motion. At the hearing, the defendants argued that § 285 applies only to corporations that voluntarily are dissolved and not to corporations that are dissolved for failure to pay franchise taxes pursuant to § 533. Otherwise, defendants argued, the first sentence of § 533(a) would be a nullity. The plaintiff countered by saying that the defendants' interpretation would render § 285 a nullity insofar as it applied to corporations that are "otherwise dissolved." Plaintiff contended that the corporate statutes envision a two-step procedure for dealing with a corporation's failure to pay its franchise taxes. Initially, the corporation is prevented from utilizing the courts to initiate actions, although it can be sued by others. This disability,

---

(d) Any corporation thereafter organized may take and shall have the exclusive right to use the corporate name of any corporation so dissolved.

[2] § *285. Continuation of corporation after dissolution for purposes of actions and winding up affairs.*

All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of three years from such expiration or dissolution, bodies corporate for the purpose of prosecuting and defending actions by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which the corporation shall have been established. With respect to any action or proceeding begun or commenced by or against the corporation prior to the expiration or dissolution and with respect to any action or proceeding begun or commenced by or against the corporation within three years after the date of the expiration or dissolution, the corporation shall, only for the purpose of such actions or proceedings so begun or commenced, be continued bodies corporate beyond the three-year period and until any judgments, orders, or decrees therein shall be fully executed.

which would arise upon the corporations's failure to pay franchise taxes last due, would continue for a year. Subsequently, upon the corporation being in default in its franchise taxes for two years, its charter may be revoked and dissolution ordered. Consequently, the plaintiff contends that two separate and distinct penalties are imposed for failure to pay franchise taxes. The first penalty, disability to sue, results from failure to pay franchise taxes for one year. The second penalty, dissolution, is ordered for failure to pay the tax after two years. Only at this point, plaintiff contends, does § 285 become operative, thus giving the dissolved corporation permission again to use the courts.

Neither side, however, cited this court either to case law or to generally recognized authority on corporation law for their respective positions. Instead, both sides relied solely on American Jurisprudence 2d. Accordingly, both sides were given an additional 30 days within which to submit memoranda of law. Subsequently, a two-week extension was granted. Both sides, however, failed to submit their memoranda. The court, therefore, is compelled to decide what appears to be a case of first impression in this jurisdiction with minimal illumination from counsel.

I

The court begins its inquiry with the observation that the historical notes to sections 285 and 533 indicate that they were derived from Title II of the 1921 Codes.[3] The 1921 Codes, including Title II, principally were adopted from the 1913 Compiled Laws of the Territory of Alaska. Burch v. Burch, 2 V.I. 559, 195 F.2d 799 (3d Cir. 1952); Municipality v. Stakemann, 1 V.I. 60 (D.V.I. 1924); Petition of Gib-

---

[3] The present § 285 was patterned after Title II, Chapter 26, § 25 of the 1921 Codes. Section 533 had its roots in §§ 5 and 9 of Chapter 31, Title II of the 1921 Codes of the former Municipality of St. Thomas and St. John, and §§ 6 and 10 of Chapter 31, Title II of the former Municipality of St. Croix.

bons, 1 V.I. 57 (D.V.I. 1924). In fact, it has been held that the 1921 code provisions, upon which 13 V.I.C. § 533 is based, were "lifted" from the Alaskan statutes then in effect. Cirino v. Hess Oil Virgin Islands Corp., 9 V.I. 518, 522, 384 F.Supp. 621, 623 (D.V.I. 1973). It is not clear, however, whether the same may be said of the predecessor of 13 V.I.C. § 285.[4]

■ The source of Virgin Islands laws is important because of settled principles of statutory construction. To the extent that the Virgin Islands has drawn on a statute of another jurisdiction, the decisions of that jurisdiction's highest court construing the statute are controlling if rendered before the statute's enactment in the Virgin Islands. Berkeley v. West Indies Enterprises, Inc., 10 V.I. 619, 480 F.2d 1088 (3d Cir. 1973); Williams v. Dowling, 4 V.I. 465, 318 F.2d 642 (3d Cir. 1963); Dublin v. Vitelco, 15 V.I. 214 (Terr. Ct. 1978). Alaska cases decided before 1921, therefore, would be controlling, but no decision construing the Alaska statute from which sections 285 and 533 were derived has been found.

## A

Although there are no Alaska decisions, the publishers of the Virgin Islands Code indicate that the court must look further.[5] The historical note to § 285 states that the 1921

---

[4] As stated, note 3 supra, § 285 was patterned after § 25 of the 1921 Codes, but § 25 differs in two material respects from its analogue, § 819 of the 1913 Alaskan code. First, former § 25 applied to all dissolved corporations, regardless of the reason for dissolution, which § 819 applied only to corporations that expired by their own limitations or that were dissolved voluntarily or by court judgment. In addition, a corporation continued under § 819 as a body corporate for a period of only three years while under former § 25 a corporation apparently continued indefinitely.

[5] In the preface to the 1957 edition of the Virgin Islands Code the following appears:

> Corporation Law. The corporation law of the Virgin Islands was revised and expanded along more modern lines, with the hope that more business enterprises will be attracted to the territory for the purpose of incorporation. Much of the old law was retained in revised form, but many new provisions, patterned largely upon the corporation laws of Delaware and Puerto Rico, were added. (Emphasis added.)

271

code section, upon which § 285 was based, was expanded to provide a three-year limitation on the winding-up process and to place a similar time limit on a dissolved corporation's amenability to suit. The historical note further states that the additions were suggested by 8 Del. Code 1953, § 278, and by the Act Legislative Assembly, Commonwealth of Puerto Rico, No. 3, § 1006, approved on January 9, 1956.

No Puerto Rico decision on the precise issue of whether a dissolved corporation has capacity to bring suit has been found. Cf. Dorado Handcraft, Inc. v. Registrar, 99 P.R.R. 21 (1970) (a dissolved corporation may convey its real property within three years of dissolution if incident to the winding-up process). Nor has a Delaware decision, rendered between the crucial period of 1953[6] and 1957,[7] been found construing 8 Del. Code § 278.[8] However, § 278 is based on former § 42 of the Delaware's General Corporation Law Revised Code of 1935, which in turn was derived from the former § 40 of the 1915 General Corporation Law of Delaware.[9] Section 278 and former § 40 and § 42 are,

---

[6] The year of enactment of 8 Del. Code § 278.

[7] The year of enactment of the Virgin Islands Code, and with it 13 V.I.C. § 285.

[8] But see Gamble v. Penn Valley Crude Oil Corp., 34 Del. Ch. 359, 104 A.2d 257 (1954). The Court of Chancery there found that the Supreme Court of Delaware had construed the predecessor of § 278 and had held that a corporation "has the power to close its affairs but not to carry on the business for which it was established." 104 A.2d at 260, citing McBride v. Murphy, 14 Del. Ch. 242, 124 A. 798 (1924).

[9] 22 Del. Laws, c. 166, as revised, Rev. Code 1915, § 1954. 8 Del. Code § 278 provides:

"*Continuation of corporation after dissolution for purposes of suit and winding up affairs.*

"All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities, and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the corporation shall, for the purpose of such actions, suits or proceedings, be continued

with linguistic differences materially similar. Interestingly, 13 V.I.C. § 285 more closely follows the language of former §§ 40 and 42 than it does that of Delaware's present § 278, although all of the various sections essentially say the same thing. Accordingly, the court turns to the Delaware decisions construing the predecessors of 8 Del. Code § 278 for guidance on the interpretation to be given 13 V.I.C. § 285.

The decision of Harned v. Beacon Hill Real Estate Co., 9 Del. Ch. 232, 80 A. 805 (1911), aff'd, 9 Del. Ch. 411, 84 A. 229 (1912) (hereinafter Harned), offers insight not only into the interaction of the two sections on which the decision in this case turns, but on the entire scheme of corporate dissolution that subsequently was embodied in Title 13 of the Virgin Islands Code. In Harned the defendant company had been dissolved for failure to pay its franchise taxes for two consecutive years. Nonetheless, the company still owned a tract of land.[10] A bill was filed in the Court of Chancery by a stockholder and creditor of the defendant

---

bodies corporate beyond the 3 year period and until any judgments, orders, or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery."

Former § 42, as reported in Addy v. Short, 8 Terry 157, 47 Del. 157, 89 A. 136, 138–39 (1952), provided:

"*Continuation of Corporation After Dissolution for Purposes of Suit, Etc.*

"All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock but not for the purpose of continuing the business for which said corporation shall have been established; provided, however, that with respect to any action suit or proceeding begun or commenced by or against the corporation prior to such expiration or dissolution and with respect to any action, suit or proceeding begun or commenced by the corporation within three years after the date of such expiration or dissolution, such corporation shall only for the purpose of such actions, suits, or proceedings so begun or commenced be continued bodies corporate beyond said three-year period and until any judgments, orders or decrees therein shall be fully executed."

The language preceding the semicolon of § 42 was taken from § 40.

[10] According to the statement of the case, the company had conveyed the property by deed. However, its conveyance was invalid pursuant to § 40 of the Corporation Act, having been attempted more than three years after the corporation's dissolution. 80 A. at 806.

corporation (hereinafter Beacon) for the appointment of a receiver to take charge of the company's affairs with power to sell its real estate. Beacon was the named defendant and, after admitting the allegations of the bill, was placed in the hands of a receiver, who was instructed to sell the real estate. Sometime after the sale the purchaser petitioned the Chancery Court to set aside the sale and to order a refund. The requested relief was based upon the purchaser's claim that the court had lacked jurisdiction to appoint the receiver because Beacon was a dissolved corporation and, thus, was not properly made a party defendant. Although the decision was founded on § 43 of the Corporation Act,[11] the court had occasion to review the various sections dealing with dissolution:

The scheme of the general corporation act is very plain. Section 39[12] provides a method of voluntary dissolution by the directors, by authority of the stockholders, and section 41[13] makes the directors the trustees to so wind up its affairs and section 42[14] directs how suits may, after such dissolution, be brought by and against the corporation. By section 40[15] the corporate *existence is extended for three years from the time of voluntary dissolution for winding up the affairs of the company.*[16] *After three years the officers of the company have no power to continue further their winding up duties.* Then comes section 43, which says that "at any time" after dissolution, the Court of Chancery may take charge of the affairs of the corporation and wind them up, and having acted on an application of a creditor or stockholder, for

---

[11] Analogous to 13 V.I.C. § 287.

[12] Analogous to 13 V.I.C. § 283.

[13] Analogous to 13 V.I.C. § 286(a), with the exception that § 41 was applicable only to voluntary dissolutions pursuant to § 39, while § 286 is applicable to voluntary and involuntary dissolutions.

[14] Analogous to 13 V.I.C. § 286(b).

[15] Analogous to 13 V.I.C. § 285. See footnote 9, supra.

[16] The reference to "voluntary" dissolution appears to be unwarranted. Former § 40 was applicable whether the corporation was dissolved voluntarily or involuntarily. See footnote 9, supra. Moreover, in Harned the corporation was *involuntarily* dissolved for nonpayment of franchise taxes. See page 273, supra. The Supreme Court of Delaware has found no difference between voluntary and involuntary dissolutions in treating the issues presented. See note 18, infra.

that purpose "may make such orders and decrees and issue injunctions therein as justice and equity shall require." This section supplements all that goes before, and supplies every need for aid in closing up the affairs of a corporation whose arm has been paralyzed by the proclamation of the Governor dissolving it as a penalty for nonpayment of the taxes which it owes to the state as a condition of its continued right to transact the business or purpose for which it was created. (Emphasis added.)

80 A. at 808. The court thus held that it had had jurisdiction to appoint the receiver and that the purchaser was obligated to comply with the terms of the sale.

The Supreme Court of Delaware affirmed. 9 Del. Ch. 411, 84 A. 229 (1912). Looking to the language and intent of §§ 40 and 43, the court found that § 40

provides for the continuance of the corporation for three years after dissolution in order that the company itself may settle and close its business. Such settlement would be entirely voluntary with the company, and the provision would not avail the creditors or stockholders, or inure to their interest, unless the company chose to settle and close its business.

Section 43 very properly provides a remedy for the creditors and stockholders of the dissolved corporation which may be invoked for their protection at any time if the company refuses, fails or neglects to settle and close its business.

84 A. at 234, Thus,

[w]hile a dissolved corporation is not continued for the purpose of doing the business for which it was created, it is continued in order that, for the period of three years, the corporation itself may settle and close its business, and, if it fails so to do, that thereafter its creditors and stockholders may, by application to the Court of Chancery, secure the appointment of trustees or receivers who shall make a final settlement of the unfinished business of the corporation.

And any property which may not have been disposed of by the company before dissolution, or during the succeeding three years, is not lost, but remains the property of the corporation, so that it may be sold and disposed of for the benefit of its creditors and stockholders.

Id. at 235; accord Townsend v. Delaware Glue Co., 12 Del. Ch. 25, 103 A. 576 (1918).

The Supreme Court of Delaware has had further occasion to explain the meaning of §§ 40 and 43 and their interaction. In Addy v. Short, 8 Terry 157, 47 Del. 157, 89 A.2d 136 (1952), the corporation had been voluntarily dissolved by consent of the stockholders. Some 35 years earlier the corporation had conveyed to the United States a fee simple determinable interest in a parcel of land. Five years after the corporation's dissolution and two years after the three-year statutory winding-up period, the Secretary of the Navy executed an instrument of abandonment and the land reverted to the corporation. Trustees for the dissolved corporation subsequently were appointed,[17] and instituted a suit for ejectment of the defendants who had taken possession of the land after the United States abandoned it. The defense was that at the time of dissolution the only interest the corporation had was that of a possibility of reverter and that this interest was extinguished either by the dissolution or by the expiration of the statutory three-year period. The lower court agreed, but the Supreme Court of Delaware reversed. With respect to the contention that dissolution worked a forfeiture of the corporation's interest in the land, the court declared that

[d]uring the three-year period of winding up, the corporation functions exactly as it had functioned before dissolution, with the important qualification that its powers are limited to closing its affairs and do not extend to carrying on the business for which it was established. But as concerns the property it has at the time of dissolution, its title and possession are unimpaired. *Whatever rights it had, of whatever nature, are preserved in full vigor during the three-year period. Any other conclusion would contravene the plain language of the statute.* The suggestion that the act of dissolution in itself in some fashion works a forfeiture or extinguish-

---

[17] This was done pursuant to § 43, discussed Harned, supra.

ment of a legal right, by analogy to the death of an individual, is therefore on the face of the statute unsound. (Emphasis added.)

89 A.2d at 139. The court also found that a possibility of reverter was an interest "of some sort" in land and that it constituted "unfinished business" of the corporation within the meaning of § 43. Id. at 140. Cf. 13 V.I.C. § 287. Neither the dissolution of the corporation nor the expiration of the three-year period, the court said, worked an extinguishment of the possibility of reverter, and the plaintiffs, as statutory successors to the corporation, were therefore entitled to maintain the action.[18]

■ The rule announced in Harned and reiterated in Addy has been the rule of decision of the Delaware courts, Frederic G. Krapf & Son, Inc. v. Gorson, 243 A.2d 713 (1968); Gamble v. Penn Valley Crude Oil Corp., supra; Broza v. Aluminum Cleaner Corp., 18 Del. Ch. 305, 159 A. 430 (1932); Mckee v. Standard Minerals Corp., 18 Del. Ch. 97, 156 A. 193 (1931); McBride v. Murphy, 14 Del. Ch. 242, 124 A. 798 (1924), aff'd, 14 Del. Ch. 457, 130 A. 283 (1925); Townsend v. Delaware Glue Co., supra, and has been adhered to by the federal courts that have had occasion to construe Delaware law. Big Sespe Oil Company v. Cochran, 276 F. 216 (9th Cir. 1921); Nome & Sinook Co. v. Ames Merchantile Co., 187 F. 928 (9th Cir. 1911); Johnson v. Helicopter & Airplane Services Corp., 404 F.Supp. 726 (D.Md. 1975); United Automatic Rifles Corporation v. Johnson, 41 F.Supp. 86 (D.Mass. 1941) (§ 42 continues the

---

[18] It should be noted that the court found no difference with respect to the issues presented between a corporation that had been dissolved for nonpayment of taxes, as Town View has been in the present case, and one that had been voluntarily dissolved by act of the stockholders. 89 A.2d at 140. Cf. Note, Suspension of Corporate Charter for Nonpayment of Franchise Tax, 48 Yale L.J. 650, 659 (1939) where, in discussing Mckee v. Standard Minerals Corp., 18 Del. Ch. 97, 156 A. 193 (1931), it is said that

"the provision for forfeiture [for nonpayment of franchise taxes] is absolute, but . . . its penal or regulatory nature must not deny to any organization the privileges incident to ordinary [i.e., voluntary] dissolution proceedings."

existence of a corporation, whose charter has become inoperative and void under the provisions of the franchise tax act, for a period of three years for the limited purposes provided by that section); Trademen's National Bank v. Johnson, 54 F.2d 367 (D.Md. 1931); Storm Waterproofing Corporation v. L. Sonneborn Sons, Inc., 31 F.2d 992 (D.Del. 1929). The construction placed on the Delaware corporate continuation statute is in general accord with the interpretation of similarly worded statutes from other jurisdictions. See M.A.S., Inc. v. Van Curler Broadcasting Corp., 357 F.Supp. 686 (D.D.C. 1973) (D.C. law); Olmstead v. Distilling & Cattle-Feeding Co., 73 F. 44 (N.D. Ill. 1895) (Ill. law); Hanan v. Sage, 58 F. 651 (D. Minn. 1893) (Minn. law); see also, Note, Suits by and Against Dissolved Corporations, 48 Iowa L.R. 1006 (1963). Thus, with respect to 13 V.I.C. § 285, the law is clear. The language of that section is to be given literal effect, and, for a period of three years, the life of a corporation that has expired or been dissolved for any reason whatever is extended for, among other purposes, prosecuting and defending actions by or against it.

## B

The question remains, however, what reasonable construction can be given to the first sentence of 13 V.I.C. § 533(a). The court looks to the intent and language of § 533 as well as the interpretation of the Delaware courts of their corresponding statute. Although there is no indication that Title 13 V.I.C. § 533 was derived from the Delaware statute,[19] the court finds the Delaware statute similar enough in purpose and meaning to be used as a guide. In Harned, supra, the franchise tax act of March 10, 1899, provided:

Section 10. If any corporation hereafter created shall for two consecutive years neglect or refuse to pay the state any tax which

---

[19] See text at p. 270.

had been or shall be assessed against it, or which it is required to pay, under any law of this state and made payable into the state treasury, the charter of such corporation shall be void, and all powers conferred by law upon such corporation are hereby declared inoperative and void, unless the Governor shall for good cause shown to him give further time for the payment of such taxes, in which case a certificate thereof shall be filed by the Governor in the Office of State Treasurer, stating the reasons therefor.[19a]

Clearly, this language is harsher than that used in 13 V.I.C. § 533. However, with respect to a corporation whose charter had been revoked, the court merely held that a corporation "loses thereby its right to do business," id. at 807–08, and not, impliedly, its right to wind up its business.

In Wax v. Riverview Cemetery Co., 41 Del. 424, 24 A.2d 431 (Super Ct. 1942), the court declared that

[i]t must constantly be borne in mind that the Franchise Tax Act is purely a revenue measure.

24 A.2d at 435; accord, Watts v. Liberty Royalties Corp., supra (the penalty provisions providing for forfeiture of charter rights are largely for the purpose of collecting the charter fees and do not end the life of the corporation). The court in Wax further found that the word "void," which is not present in 13 V.I.C. § 533, was not to be taken in its most literal sense.

The language of the Act seems strong, but it is quite apparent that the word "void" was never intended in the sense of absolutely invalid, for there has always been provision for reinstatement. This, of course, could not occur if the charter had become absolutely void. . . . This reinstatement was, of course, of the old corporation . . . with all the rights, franchises, privileges and immunities it formerly held.

 . . . .

 . . . [t]he proclamation of forfeiture for nonpayment of taxes

---

[19a] 21 Del. Laws, c. 166, as amended, 22 Del. Laws, c. 15. See Harned, supra, 80 A. at 806.

does no more than forfeit the corporate right to do business, but does not extinguish the corporation as a legal entity.[20]

24 A.2d at 435–36; accord, Watts v. Liberty Royalties Corp., supra; see also Frederic G. Krapf & Son, Inc. v. Gorson, supra, 243 A.2d at 715–16.

Finally, there is in the enigmatic statement which appears in Frederic G. Krapf & Sons, Inc. v. Gorson, 243 A.2d at 715, that

failure to pay franchise taxes is an issue solely between the corporation and the state since the franchise tax statutes are for revenue-raising purposes alone.

 The various rationales employed by the Delaware courts are equally applicable to the Virgin Islands. Without doubt, 13 V.I.C. § 531 et seq. primarily is a revenue-producing measure, and the franchise tax should be an issue solely between the Virgin Islands Government and the defaulting corporation. To resolve the issue at bar, however, the court need not so hold. More importantly, a corporation that has been dissolved for failure to pay franchise taxes as required by 13 V.I.C. § 533 may be reinstated with all the rights, privileges and immunities conferred by its original articles of incorporation. 13 V.I.C. §§ 312, 313; see also Keith Enterprises, Inc. v. Centurion Corp., 10 V.I. 206 (D.V.I. 1973); Cirino v. Hess Oil Virgin Islands Corp., supra. It is thus clear, in light of the combined remedial effect of §§ 285, 312 and 313, that forfeiture of the corporation's right to file a suit may not be imposed unless clearly mandated. Cf. Note, 48 Yale L.J., supra, at 651, where it is said that forfeiture is not a "favorite of

[20] It is important to note that the court in Wax did not have occasion to construe then section 42 of the Delaware Corporation Laws. Its only concern was whether the defendant corporation could pass good title to the plaintiff purchaser. The answer to that depended on a construction of the franchise tax act. This court does not believe that the court meant to suggest that reinstatement was the only way in which a dissolved corporation could protect its legal rights. In fact, the court's reliance on Harned, supra, suggests that just the opposite is true.

the law." Accordingly, unless the decisions rendered by the higher courts of this jurisdiction are in direct conflict with this court's conclusion, this court believes that the proscription contained in 13 V.I.C. § 533(a) applies only to undissolved corporations in arrears of the franchise tax payments. The court further concludes, absent a higher court decision to the contrary, that a corporation dissolved for nonpayment of its franchise taxes pursuant to 13 V.I.C. § 533 nonetheless may, within three years of the date of dissolution, commence or maintain an action in this jurisdiction as a dissolved corporation so long as the action is strictly incidental to the winding-up of its corporate affairs.

## II

Consequently, this court must determine whether there is contrary controlling authority in this jurisdiction. At oral argument the defendants contended that Keith Enterprises, supra, and Cirino, supra, inferentially militated against the plaintiff's position.[21] The court does not agree. Moreover, the court believes that it can harmonize these two apparently irreconcilable decisions.[22] In both cases the courts were confronted with motions to dismiss for failure of the corporate plaintiffs to pay their franchise taxes. In Cirino, however, none of the four corporations had been dissolved. Accordingly, 13 V.I.C. § 285 was inapplicable to the Cirino plaintiffs.

In Keith, as in this case, the plaintiff corporation had been dissolved for failure to pay its franchise tax. Although

---

[21] See also Royal Insurance Co., Ltd. v. Caribbean Developing & Processing Laboratory, 12 V.I. 549 (D.V.I. 1976).

[22] In Cirino, Chief Judge Christian concluded that 13 V.I.C. § 533 "has no application to suits sounding in tort." 9 V.I. at 526, 384 F.Supp. at 625. In Keith, Judge Young took issue with the Cirino holding and said:
"I think the appropriate solution is not to hold that the section is inapplicable, but rather to afford the corporation an opportunity to reinstate itself as a corporation in good standing and proceed with the action. This alternative should be available to plaintiffs whether they sue in tort or in contract."
10 V.I. at 208.

the opinion of Judge Young suggests that reinstatement is the exclusive remedy for a corporation desiring to prosecute an action,[23] there is nothing in Keith to suggest that either party brought 13 V.I.C. § 285 to the attention of the court or that the court sua sponte considered it. Consequently, in the absence of a decision construing both sections, this court does not believe that the issue presented in the instant case is resolved by Keith or that Keith is binding in the case sub judice.

Moreover, this court believes that if the District Court had considered § 285 in conjunction with § 533 it would have reached the same result as this court.[24]

Finally, this court believes that a reasonable construction of 13 V.I.C. §§ 285 and 533 and the decisions in Cirino and Keith lead to the following conclusions:

1. Failure of a plaintiff corporation to pay its franchise tax last due *will* lead to a dismissal of the action unless

 a. the action sounds in tort, or

 b. the corporation pays the tax.

2. Failure of the plaintiff corporation to pay its franchise tax last due will *not* lead to a dismissal of the action if the corporation

 a. has already been dissolved, and the action is part of the winding up of the corporation's business, or

 b. elects to pay the tax and become reinstated.

Accordingly, defendant's motion to dismiss will be denied.

---

[23] See e.g., the language of 10 V.I. at 208–09.

[24] See M.A.S., Inc. v. Van Curler Broadcasting Corp., 357 F.Supp. 686 (D.D.C. 1973). The federal court was required to give greatest deference to decisions of the local court of appeals, but still reached a result contrary to that reached by the District of Columbia Court of Appeals, finding that there was no reason to follow "blindly" what would otherwise have been a binding decision where the local court had failed to consider a relevant section of the D.C. Code. Moreover, the district court explicitly concluded that if the omitted section were brought to the local court's attention "it is unlikely" that it would adhere to its former decision. Id. at 691.